**David KAYE, Appellant,**

v.

**UNITED STATES of America et al.,
Appellees.**

**No. 24926.**

United States Court of Appeals,
District of Columbia Circuit.

Sept. 8, 1972.

Mr. David Kaye, pro se.

Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry and William H. Schweitzer, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and FRANK A. KAUFMAN,* United States District Judge for the District of Maryland.

FRANK A. KAUFMAN, District Judge:

Kaye, a Yale law school student, instituted this proceeding to recover alleged damages in the amount of $1615.94 for loss of his expected 1970 summer earnings with the United States Arms Control and Disarmament Agency (the Agency). Jurisdiction exists under 28 U.S.C. § 1346(a)(2).[1] The Court below granted summary judgment for defendants.

In the summary judgment context of this case, the following facts are undisputed: In December, 1969, Kaye wrote to the Agency about employment opportunities during the summer of 1970.[2] The acting personnel officer of the Agency responded on January 23, 1970.[3] On February 3, 1970, Kaye's application for a student assistantship was received by the Agency. On April 1, 1970, defendant Zimmerman, assistant personnel officer of the Agency, called Kaye by telephone to inform him that he had been selected to participate in the summer employment program, starting in June. On April 3, 1970, defendant Adams, personnel officer of the Agency, wrote to Kaye, informing him of his selection and en-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d) (1970).

1. The Government calls attention to 28 U.S.C. § 1346(d)(2) which provided before its amendment in 1964:

   (d) The district courts shall not have jurisdiction under this section of:

   *       *       *       *       *

   (2) Any civil action or claim to recover fees, salary, or compensation for official services of officers or employees of the United States.

   *See* Gordon v. United States, 126 F.Supp. 847 (E.D.Ark.1954). But 28 U.S.C. § 1346(d) has provided since 1964:

   (d) The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

   As such it does not derogate from the jurisdiction granted by 28 U.S.C. § 1346 (a)(2), which states:

   (a) The district courts shall have original jurisdiction, concurrent with the Court of claims, of:

   *       *       *       *       *

   (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

2. *Inter alia*, Kaye wrote:

   My background is strongest in the fields of physics and law and includes some familiarity with game theory. I received a Bachelor's Degree from M.I.T. and a Master's Degree from Harvard University for my work in astrophysics and am currently studying at Yale Law School.

3. That official advised Kaye of the positions which would be available for the summer, the procedure for filing a formal application, and the qualifications which would be required of applicants for those positions. The letter stated, in part:

   During the coming *summer*, the Agency anticipates the temporary employment of a small number of *students* to serve as Clerk-Typists and Clerk-Stenographers GS–3 and GS–4, and Student Assistants GS–5 and GS–7, to assist scientific, professional and technical members of the staff. [Emphasis supplied.]

   In the case of applications for the student assistant positions, the letter advised Kaye that candidates "must be bona fide students at accredited colleges or universities . . . ." Those candidates were instructed to apply before March 13, 1970. The last paragraph of the letter began:

   Because of the *time element involved in the Agency security investigation requirements*, the selection process must be completed by *April 1, 1970*. Successful candidates will be advised and requested to furnish additional information. *       *       * [Emphasis supplied.]

closing forms for Kaye to complete and return in connection with security clearance and stating specifically that that clearance was required *"prior* to appointment" (emphasis in original).[4] The forms were completed by Kaye and received by the Agency's personnel office no later than April 15, 1970.[5] During April and May, Kaye assumed that he had his summer job.[6] On May 28, 1970, Kaye telephoned the Agency to inquire about when he was to report for duty. He was told that the security investigation had not been completed and that, therefore, the date upon which his employment was to commence had not yet been determined.

On June 4, 1970, Kaye moved to Washington, D. C. During June, he several times called the Agency to check on the progress of the security investigation, each time being told that the security investigation had not been completed. Kaye asserts in his affidavit, and appellees do not deny, that upon each such occasion Kaye was led by Mrs. Zimmerman to believe that "starting arrangements would be finalized within a few days . . . ." and that

[r]elying on the continued assurances . . . I refrained from seeking or accepting other summer jobs and remained in Washington, D. C., to be in a position to start work immediately upon notification by the Agency that clearance had been secured.

On July 1 or 2, 1970, Mrs. Zimmerman notified Kaye by telephone that the security investigation would take at least another thirty days. Kaye informed Mrs. Zimmerman at that time that he would find other employment. He then contacted the office of his Congressman, the Honorable Claude Pepper. When an administrative assistant to the Congressman inquired of the Agency about the matter, defendant Adams told her that if Kaye's security clearance were not re-

---

4. The full letter reads as follows:

I am pleased to inform you that you have been selected to participate in the 1970 Summer Employment Program of the United States Arms Control and Disarmament Agency.

In accordance with the qualification requirements, policies and procedures of the United States Civil Service Commission, and the Agency's selection criteria, you will be appointed as a Student Assistant, GS-7, at the annual salary rate of $7639, and will be assigned to assist professional staff members in the Field Operations Division, Weapons Evaluation and Control Bureau. If for any reason you are unable to accept this summer employment, please notify us immediately.

Public Law 87-297, which established ACDA, requires completion of a full-field background security and loyalty investigation for all individuals *prior* to appointment. *Inasmuch as the time element involved in such clearance is considerable,* it will be necessary for you to complete and return the enclosed forms no later than April 10, 1970. Upon completion of the appointment process we will contact you further.

We are looking forward to having you work with us this summer. In the interim, if you desire further information, please do not hesitate to contact us. [Emphasis added except for the word *prior* which was emphasized in original.]

The statutory requirement with regard to security clearance is set forth in 22 U.S.C. § 2585.

5. Kaye's return of the forms by April 15, 1970 rather than by April 10, 1970 seemingly created no problem and would not appear to be material to the disposition of this case.

6. Kaye states in an affidavit attached to his motion for summary judgment:

During the months of April and May, relying on the communications described above and expecting to work at the Agency for the summer, I did not pursue other possible summer jobs and rejected at least one other offer of summer employment. In addition, I traveled to Washington, D.C., on two occasions, searching for summer housing.

In that same affidavit Kaye has also stated that defendant Zimmerman orally informed him on April 1, 1970 that "the usual starting date for summer students was the second week of June . . . ." Kaye contends that the implication which he drew from that statement was that security investigations are normally completed by that time.

ceived by July 15, 1970 (or, at the very latest, by July 30, 1970), there would not be sufficient time remaining in the summer for Kaye's employment to be beneficial either to the Agency or to Kaye. On August 10, 1970, Kaye having been given security clearance, Adams wrote to Kaye, informing him of this fact and asking whether Kaye desired "to accept our offer of employment." Kaye declined by reply letter dated August 12, 1970.

Prior to granting summary judgment for defendants and denying Kaye's cross-motion for summary judgment, the District Court granted a protective order staying discovery by Kaye. The District Court was silent as to the reasons for its discovery or summary judgment rulings. However, its entry of judgment for defendants necessarily rested upon a holding that the Government did not incur any legal obligation to Kaye.

22 U.S.C. § 2585 provides in part:

No person shall be permitted to enter on duty as such an officer, employee, consultant or member of advisory committee or board, or pursuant to any such detail, and no contractor or subcontractor, or officer or employee thereof shall be permitted to have access to any classified information, until he shall have been investigated in accordance with this subsection and the report of such investigations made to the Director, and the Director shall have determined that such person is not a security risk or of doubtful loyalty. Standards applicable with respect to the security clearance of persons within any category referred to in this subsection shall not be less stringent, and the investigation of such persons for such purposes shall not be less intensive or complete, than in the case of such clearance of persons in a corresponding category under the security procedures of the Government agency or agencies having the highest security restrictions with respect to persons in such category.

Citing that statute the Government contends that the Agency could not have entered into a contract with Kaye prior to his security clearance. But the Government ignores that it is undisputed that authorized governmental officials made a promise, subject only to security clearance, of a summer job to Kaye, a law student, and that Kaye has filed herein a sworn statement that he was told that the "usual starting date for summer students" [7] was in June; that he turned down other summer employment; and that he made himself available in Washington, D. C. for summer work at the conclusion of his law school work in May-June. Kaye asserts that the Government should reasonably have expected him so to rely and act and that the Government also knew that Kaye planned to return to law school in August-September. "Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them." Greene v. Howard University, 134 U.S.App.D.C. 81, 412 F.2d 1128, 1135 (1969). Viewing the existing record in this case, and reading it most favorably from Kaye's point of view, as this Court must do in the context of determining whether the Government's motion for summary judgment should have been granted, Kaye was entitled to pursue appropriate discovery and to attempt to prove the existence of a subsidiary promise by the Government to exercise its best efforts in good faith to complete or to have completed the security clearance with regard to Kaye as reasonably promptly as possible. It is true that the Agency's promise of employment was conditioned upon security clearance, and that therefore performance of the terms of that promise did not become due unless and until such clearance was obtained. But if as Kaye asserts, the Government's conduct added up to an additional, implied promise to have the security check completed with reasonable speed, then at the time Kaye forwarded the clearance documents on April 15, 1970, the Government would have had a

7. See n. 6 *supra.*

duty to act with all reasonable speed to complete or to have completed the security check not only before the summer employment period was almost over but, if reasonably possible, before it started. Additionally, Kaye was entitled to the opportunity to establish that the Government induced Kaye's reliance by its implied promise and that therefore the Government cannot be permitted to avoid its duty to perform under that promise. *Cf.* Restatement of Contracts §§ 90 and 91 (1932); Tentative Draft of Restatement of Contracts 2d (1965); 1 S. Williston, Law of Contracts § 140 (3d ed. 1957) and (rev. ed. 1936); 1A A. Corbin, Contracts §§ 193–209 (1963).

On remand, Kaye should be permitted to engage in appropriate discovery and otherwise to pursue his quest for relief herein in accordance with this opinion.

It is so ordered.