Machinist's Mate Second Class Ronald W. JOHNSON, Plaintiff-Appellee,

v.

John N. CHAFEE, Secretary of the Navy, et al., Defendants-Appellants.

No. 72–1654.

United States Court of Appeals, Ninth Circuit.

Nov. 27, 1972.

Rehearing Denied Jan. 12, 1973.

---

Michael Kimmel (argued), Walter H. Fleischer, Attys., Harlington Wood, Jr., Acting Asst. Atty. Gen., Washington, D. C., John L. Guth, Asst. U. S. Atty., William D. Keller, U. S. Atty., Los Angeles, Cal., for defendants-appellants.

Richard P. Fox (argued), Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, MOORE* and ELY, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a judgment and order of the United States District Court for the Central District of California granting the application of the appellee Johnson for a writ of habeas corpus requiring the Secretary of the Navy to cancel a two-year enlistment extension agreement and to discharge the appellee from the Navy.

On September 22, 1967, petitioner-appellee Johnson enlisted in the United States Navy for a term of four years. To obtain the advantages of special training in a Nuclear Field Program [1] being offered to enlisted men who agreed to extend the four-year term to six years, Johnson on October 16, 1967, did "voluntarily agree to extend [his] my enlistment for a period of TWO years from

---

* The Honorable Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. Bureau of Naval Personnel Instruction ("BUPERSINST") No. 1306.64E, ¶ 4h (April 13, 1966) requires that personnel entering the nuclear field program agree to extend their enlistments so as to achieve a minimum six years active service commitment, measured from the date of enlistment. *See also* 32 C.F.R. 730.4 (e) (1).

the date of expiration thereof, subject to the provisions and obligations of [his] my said contract of enlistment of which this, [his] my voluntary agreement shall form a part." The agreement further stated that the Nuclear Field Program was the "REASON FOR EXTENSION" and that "I [Johnson] understand that this extension agreement becomes binding upon execution and may not be canceled except as set forth in BUPERS Manual, Article C1407." The extension agreement was signed by Johnson and sworn to before a Warrant Officer.[2]

Johnson commenced his special nuclear training on July 20, 1968, and completed the first twenty-four weeks of instruction, graduating satisfactorily on February 7, 1969. After completing nine additional weeks of advanced training, he was disenrolled by the Navy for medical reasons (poor hearing) and assigned to his pre-nuclear program duty as a machinist's mate.

In October, 1969, Johnson requested cancellation of his extension agreement, alleging that the agreement was null and void because it had not been sworn to before a *commissioned* officer, as required by Article C–1407(3)(a) of the Naval Personnel Manual.[3] Johnson's request was denied. His four-year term of enlistment expired on September 21, 1971, and shortly thereafter he brought this action to obtain his release from the Navy.

The district court ordered the Navy to release Johnson, holding that in order for it to be considered "legal and bind-ing" the extension agreement had to be signed by both the individual and the *commissioned* officer administering the oath[4] and that the Navy should be "bound by its own validly promulgated regulations." From the judgment ordering Johnson's release, the Secretary of the Navy appeals.

■ There is no question that Johnson voluntarily signed the extension agreement and that he understood and received (up to the time of his medical disenrollment) the benefits derived therefrom. The sole issue presented on appeal is whether, as Johnson contends, his signature and oath sworn to before a warrant officer instead of a commissioned officer prevented the agreement from becoming "legal and binding" *ab initio* and incapable of being ratified by his acceptance of the contractual benefits; or, as the Secretary contends, whether notarization of the agreement by a non-commissioned officer was merely a "formal defect" in the notarial authority of the witnessing officer which did not vitiate the legal effect of the agreement. Upon examination of the facts here involved, we agree with the Secretary and therefore reverse the judgment of the district court.

We are mindful of the fact that, while courts are reluctant to interfere in military affairs, the Navy is bound by its own validly promulgated regulations and that district courts may properly entertain suits by servicemen requesting compliance with such rules. *See* Nixon v. Secretary of the Navy, 422 F.2d 934 (2d

2. The administering officer, a "first-step warrant officer (W–1)", was not a commissioned officer and therefore was not authorized under statute or regulations to administer oaths in connection with enlistment agreements. The Navy has the statutory power to issue regulations authorizing Naval personnel other than commissioned officers to administer oaths, under 10 U.S.C. § 936(b)(6), but it has not issued such regulations.

3. Article C–1407(3)(a) of the Manual provided, in relevant part:

*General.* In order to be considered legal and binding, pertinent portions of the Agreement to Extend Enlistment must be filled in as shown in Exhibit 1A–1 of Article B–2311 and signed by both the individual and the commissioned officer administering the oath on or prior to expiration of enlistment. . . . *Agreements entered into subsequent to the date of expiration of enlistment are without legal force and effect.* [emphasis in original.]

The present version of Article C–1407 is Article 1050150 of the Navy's Bureau of Personnel Manual (BUPERSMAN); the two are substantially similar.

4. *See* note 3 *supra.*

Cir. 1970); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). Contrary to the opinion of the district court below, however, because Johnson had clearly manifested his voluntary written intent to be bound by the extension agreement, a mere formal defect therein, which in no way prejudiced him, does not present adequate grounds to cancel an otherwise valid agreement. Failure to swear to the execution of an extension form has been held not to affect the validity of the extension, United States ex rel. Stone v. Robinson, 431 F.2d 548 (3d Cir. 1970), wherein the court said at page 553:

> Certainly, any routine failure of appellant to swear to his execution of his extension form would not affect the validity of the enlistment extension, just as the violation of every regulation in some particular does not always invalidate the action taken thereunder. If the Regulation in this instance was not complied with in the respect indicated, appellant was not prejudiced in any way.

Here there was no lack of an oath but only a question of the status of the person administering it; obviously an *a fortiori* situation.

Far from being prejudiced from the fact that a non-commissioned officer accepted the contract terms on behalf of the Navy, Johnson was the recipient of considerable benefits under the agreement: thirty-three weeks of special training which he would not otherwise have received. On its part, the Navy, by enrolling Johnson in the Nuclear Field Program, manifested its intent to be bound by the extension agreement, regardless of any flaw existing in the execution of the contract. Thus, even assuming for the moment that the notarial defect prevented the parties from being legally bound at the time of signing, their subsequent acts constituted a dual ratification of the contract terms. *See* Clews v. Jamieson, 182 U.S. 461, 483, 21 S.Ct. 845, 45 L.Ed. 1183 (1901); Restatement (2d) Agency, § 319 (1958).

The agreement in question, however, did not need ratification in order to bind the parties; it was valid from the moment Johnson signed his name to the agreement and swore to his loyalty oath before the warrant officer.[5] Even if Johnson had neglected entirely to take the oath, his signature would have sufficed to bind him. *See Nixon, supra,* at 938–940 of 422 F.2d and *Stone, supra,* at 552 of 431 F.2d.

The extension agreement states that it "shall form a part" of the enlistment contract. By signing the extension agreement Johnson agreed that the extension was " . . . subject to the provisions and obligations of said contract of enlistment." The contract of enlistment contains numerous provisions and obligations that continue in force by reason of the extension agreement, such as the obligations to discharge duties in conformance with lawful commands, to submit to disease-preventive measures, and to continue to uphold solemnly the oath taken upon enlistment.[6] According to Johnson's Enlistment Contract, he swore to the oath before a commissioned officer at the time of his enlistment.

---

5. The oath solemnly sworn to by Johnson was as follows:

    . . . I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the Regulations and the Uniform Code of Military Justice. So help me God. We question the sincerity of the argu-

ment that this oath is devoid of meaning unless uttered in the presence of a commissioned, as opposed to a warrant, officer; and that a serviceman cannot be deemed to have meant it unless made before the proper Navy representative. We are reminded of the wisdom of the ancient Greek Aeschylus, who taught us that "It is not the oath that makes us believe the man, but the man the oath." [Aeschylus, *Fragment* 385.]

6. *See* note 5 *supra*.

Since the oath was properly sworn to by Johnson at the time he entered into his enlistment contract, since it continued in force as a sworn provision and obligation of that contract by reason of his voluntary signing of the enlistment extension agreement, and since it was the same provision and obligation set forth in the extension agreement, the conclusion is inescapable that Johnson's swearing to the same provision and obligation again at the time he signed the extension contract was merely repetitive of an act which had already been performed. The requirement that the oath of allegiance be administered at the time of signing the extension agreement is merely a formality incident to the necessary act of signing; there is sufficient legal compliance with the provision if, as here, the oath was properly administered in the original enlistment contract. Johnson's signature on the extension agreement thus caused the terms of the extension to be incorporated into the original contract of enlistment.[7] There is no question that Johnson's original enlistment agreement was "legal and binding" upon him; and it is uncontroverted that he voluntarily agreed to add two years to his original term of enlistment, in consideration of the Navy's providing him with advanced nuclear training. Having received a major portion of the training promised him, Johnson cannot now argue that it is inequitable to require him to fulfill his part of the bargain.[8]

■ Johnson's final claim is that even if the extension agreement is found to have been validly executed he is nonetheless entitled to cancellation of the agreement on the ground of impossibility of performance of the contract: he was prevented from completing the training program for medical reasons beyond his control. This argument too must fail. The Navy enrolled Johnson in good faith and provided him with thirty-three weeks of special training until his illness disqualified him from further participation in the advanced segment of the program. The Navy stood willing and ready to perform its part of the agreement; it did not cause the appellee's illness nor his disenrollment. Although the illness prevented Johnson's further participation in *that program,* it did not, and does not now, render impossible his service of a prorated two-year extension commitment as a machinist's mate, in payment for the thirty-three weeks' training he did receive.

The district court judgment is reversed.

---

7. The applicable statute relating to execution of Navy extension agreements at the time of the agreement here in question, 10 U.S.C. § 5539(a), (1964), required only that the extension be implemented by written agreement of the serviceman:

    (a) Under regulations prescribed by the Secretary of the Navy with the approval of the President, a member of the Regular Navy . . . may extend . . . his enlistment by written agreement for less than one year or for a period of one, two, three, or four full years.

Section 5539(a) has been superseded by 10 U.S.C. § 509 (1970), which provides that " . . . Under such regulations as the Secretary concerned may prescribe, the term of enlistment of a member of an armed force may be extended . . . with his written consent for any period."

8. BUPERSMAN Article 105300 and BUPERSMAN Article D–2305 provide appropriate relief for a serviceman forced to terminate special schooling by allowing him to reduce his extension to a period three times longer than the actual time spent in school. This reduction is still available to the appellee Johnson. Thus, with this reduction or proration, Johnson's extension commitment still outstanding will be twenty-three months rather than twenty-four months.