**Richard R. REAMER, Appellant,**

v.

**The UNITED STATES of America et al., Appellees.**

No. 74–2290.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1975.

Decided Jan. 8, 1976.

Thomas F. Loflin, III, Durham (Loflin, Anderson & Loflin, Durham, N. C., on brief), for appellant.

Ronald V. Shearin, Asst. U. S. Atty. (N. Carlton Tilley, Jr., U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

HAYNSWORTH, Chief Judge.

In this action for breach of an enlistment contract, the plaintiff claims that the military agreed to delay his period of active duty in the reserves until after he had finished a semester of school. The district court found that the contract contained no agreement for a delay. We affirm.

In the summer of 1968, Richard Reamer was ready to enter his second year of law school, but the Selective Service had classified him as 1–A. After contacting various reserve units, he was given an opportunity to join the army reserves in Salisbury, North Carolina. On August 24, 1968 he signed an enlistment contract, which Captain Dominick and Warrant Officer Wall had negotiated on behalf of the military.

Reamer's enlistment contract is in the usual form. Its first fifty-three paragraphs contain information about him and about the obligations that he was undertaking. Paragraph 54 provides:

> I have had this contract fully explained to me, I understand it, and certify that no promise of any kind has been made to me concerning assignment to duty, geographical area, schooling, special programs, assignment of government quarters, or transportation of dependents except as indicated in attached acknowledgment of understanding of service requirements.

In paragraph 55 Reamer signed to attest his understanding of and the truth of the information in the preceding clauses. The 56th paragraph, entitled "Remarks," contains the typed statement: "Delayed from entry on ACDUTRA or active duty until 1 Feb 69." After that the oath of enlistment, signed by Reamer, and the confirmation of enlistment, signed by Dominick.

The "acknowledgment of understanding of service requirements," referred to in the body of the enlistment contract, is a separate document, which Reamer signed at the same time that he executed the contract. That form supplies the enlistee with a variety of information about military obligations, including the statement: "I will enter on active duty for training for a period of —* weeks within 120 days of this date, unless a delay for a longer period is authorized or directed by the Department of the Army."

At a hearing, Captain Dominick testified that the statement in paragraph 56 was only a recommendation and that the officers tried to explain that to enlistees. He did not remember discussing it with Reamer. Mr. Wall, however, testified that he told the plaintiff twice that he could not bind the military to a delay and that special permission must come from the Third Army. Reamer testified that he thought that the statement in the contract did operate to delay his active duty. Under that impression, he began the fall semester at the University of North Carolina School of Law and incurred a number of expenses necessary for his studies. When the Army ordered him to active duty on December 3, 1968, he was obliged to leave school without finishing the semester.

Reamer filed this suit against the United States, Wall and Dominick to recover his expenditures for the unfinished semester. The district court dismissed the complaint, finding that the "remarks" section of the form was not a part of the contract because the plaintiff had signed in the preceding paragraph. It found, as a fact, that Wall had told the plaintiff that he could not bind the army to a delay and that he did not misrepresent facts concerning the plaintiff's reporting date. Accordingly, it held that the defendants had made no express or implied representation that Reamer would not be called to active duty before February 1, 1969.

Since we think that paragraph 56 was a part of the contract, we must apply the usual rules of contract law to determine whether the army promised to delay the plaintiff's entry on active duty. Reamer argues that the contract is clear and unambiguous on its face and that the district court should not have considered the oral testimony. Except that they are in a paragraph entitled, "Remarks," the words, "[d]elayed from entry on ACDUTRA or active duty until 1 Feb 69," do, on their face, indicate that the plaintiff was accorded the desired delay. Nonetheless, paragraph 54 provides that the enlistee has received no promises about his "assignment to duty" except as set forth in the acknowledgment. Since paragraph 54 contains express references to the location and type of duty, the words "assignment to duty" are readily understood to include the time of the assignment. The statement in the "remarks" section is not repeated in the acknowledgment; instead, it provides that the enlistee will go on active duty within 120 days, "unless a delay for a longer period is authorized or directed by the Department of the Army." Since the acknowledgment and paragraph 56 appear to conflict, the district court could properly consider oral testimony to ascertain the parties' intent. *See Shelton v. Brunson*, 465 F.2d 144 (5th Cir. 1972). *See also Gausman v. Laird*, 9th Cir., 422 F.2d 394.

A further argument in favor of the plaintiff is that the statement in paragraph 56 supplied the authorization for delay required in the acknowledgment. Read in that fashion, the two clauses complement each other, and there is no ambiguity requiring a resort to oral evidence. We cannot accept that interpretation of the two clauses however. The acknowledgment specifically requires that the authorization come from the Department of the Army. Although Wall and Dominick had the authority to bind the military to enlistment contracts, the words of the acknowledgment signify that a delay for more than 120 days is not routinely part of an enlistment contract and that special permission from a higher authority is required. The plaintiff does not contend that the two officers had the actual authority to grant that permis-

sion. Thus, the words of the contract do not indicate that the Department of the Army authorized the delay, and there was an ambiguity in the contract. It was then proper for the district court to consider oral testimony about contemporaneous statements and explanations of the parties in the resolution of the ambiguity. Since the court's findings on that point are not clearly erroneous, its decision must be affirmed.

■ The plaintiff also says that his claim of promissory estoppel should have been considered even after the contract claim failed. He relies on the Restatement's provision that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90. The essence of the denial of the contract claim is that no promise of a delay was made. Furthermore, even if the contract were technically construed to contain a promise, the defendants could not reasonably have expected the plaintiff to rely, and the plaintiff could not reasonably have relied, on the statement in paragraph 56 after he had been twice told that permission for the delay must come from higher authorities.

Since we find no merit in the other claims of error concerning the admission of evidence in the trial to the court, we affirm the judgment of the district court.

*Affirmed.*

CRAVEN, Circuit Judge (dissenting):

The United States loses when it treats one of its citizens unfairly. In this case it is stipulated that ". . . the usual procedure by the Army and the Army Reserve in enlistment contracts containing terms similar to the one in dispute in this action is to return the enlistment contract to the enlisting officer and inform the enlistee that the Army will not honor such a term but will give the enlistee a chance to rescind the contract if he desires . . . ." It is further stipulated that the usual procedure

outlined above was not followed in Reamer's case. The government suggests no reason why it discriminated against Reamer.

Nothing could be clearer than the words "delayed from entry on ACDUTRA or active duty until 1 February, 1969" appearing in the enlistment contract. But it is an empty promise, so the majority holds, because the delay was not "authorized or directed by the Department of the Army." My brothers hold that the officers of the Army with whom Reamer dealt and who obtained his signature to the enlistment contract represented the Department of the Army for the purpose of getting him to sign the contract, but not for the purpose of putting the words of delay in it. It is a distinction too fine for me, and one to which I cannot assent.

In the new era of the volunteer Army, I am surprised that the government would want what it now has obtained: a decision which, if publicized, must be read by prospective enlistees to mean: Warning! You may not safely rely upon the terms of your enlistment contract.