Richard F. DUBEAU, Jr., Petitioner,

v.

COMMANDING OFFICER, NAVAL RESERVE CENTER, BOSTON, MASSACHUSETTS, and Secretary of the Navy, Respondents.

Civ. A. No. 77–1109–M.

United States District Court,
D. Massachusetts.

May 12, 1977.

Thomas G. Shapiro, Silverglate, Shapiro & Gertner, Boston, Mass., for petitioner.

James N. Gabriel, U. S. Atty., Judith Hale Norris, Asst. U. S. Atty., Boston, Mass., for respondents.

## MEMORANDUM AND ORDER

FRANK J. MURRAY, District Judge.

This is a petition for writ of habeas corpus by petitioner, an enlisted member of the United States Naval Reserve, seeking an order of this court that the respondents assign the petitioner to a reserve unit in Boston, Massachusetts for the remainder of his term as a reservist or, in the alternative, that the respondents discharge the petitioner from the Naval Reserve.

The case came on to be heard on petitioner's application for a preliminary injunction to restrain respondents from enforcing the order directing petitioner to report for involuntary active service, and from disciplining petitioner for failure to report for active service as ordered. The case was presented on the pleadings, the testimony of petitioner, the offer of testimony of petitioner's father to corroborate petitioner's testimony, the documents constituting the service record of petitioner, and the arguments of the parties. Jurisdiction of the court is invoked under 28 U.S.C. § 2241. This memorandum contains findings and conclusions pursuant to Fed.R.Civ.P. 52.

Petitioner enlisted in the United States Navy on May 23, 1973, for two years of active duty to be followed by service in the United States Naval Reserve. He was 17 years of age at the time and living with his parents. Petitioner executed an enlistment contract with the United States Navy. He entered upon his enlistment and was released from active duty on August 8, 1975. Petitioner was assigned to a reserve unit in Boston, Massachusetts, on August 26, 1975, and he joined the unit. Beginning in April 1976 petitioner was ordered to perform week-end drills in Newport, Rhode Island. He attended drills in Newport for a time, and after October 1976 he ceased to attend the drills. The respondent Commanding Officer, under date of March 15, 1977, notified petitioner of the order to perform 27 days of involuntary active duty on board the U.S.S. FORTIFY at Little Creek, Virginia, commencing April 20, 1977.[1] The order to active duty resulted from petitioner's failure to attend the drills in Newport.

■ Petitioner contends that the order given him to perform week-end drills in Newport was in violation of his enlistment contract to be permitted to fulfill his reserve obligations in Boston.[2] He has offered testimony, over the objections of the respondents, that the recruiting officer prior to the execution of the enlistment contract told petitioner and his father that the reserve obligation of monthly drills would be performed in the Boston area; that this statement of the recruiting officer was made in response to inquiries put by petitioner and his father. He also testified that although not the sole factor the statement of the recruiting officer was a factor on which he relied in enlisting. Petitioner admits that the enlistment contract was in writing, but contends that the oral representation of the recruiting officer that the monthly drills would be performed in the Boston area became a part thereof.

The service record of petitioner establishes that after completing his active service he was assigned on August 26, 1975 to the Naval Reserve Reinforcement Unit 301, ERC, 495 Summer Street, Boston, Massachusetts, and that assignment continued effective until April 1, 1976 when he was

1. The reporting date has been postponed to June 1, 1977 by stipulation of the parties.

2. An enlistment contract, as an agreement between the enlistee and the military service involved, is subject to traditional principles of contract law. *Peavy v. Warner*, 493 F.2d 748, 750 (5th Cir. 1974) and cases cited therein.

assigned to the Ship Maintenance Repair Unit 4001, Naval Reserve Center, Boston. That order remained effective until petitioner was ordered to active service, as noted above, on March 15, 1977.

To be entitled to the extraordinary remedy of injunctive relief at this stage petitioner must demonstrate strong likelihood of success on the merits of his claim, and that irreparable harm to him will result if injunctive relief is denied that outweighs any which may befall respondents from the court's intervention. *See Automatic Radio Mfg. Co. v. Ford Motor Co.*, 390 F.2d 113 (1st Cir.), cert. denied, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). Accordingly, the terms of the enlistment contract will be examined in determining whether petitioner is entitled to preliminary relief.

The enlistment contract was duly executed by the petitioner. . Among its terms paragraph 54 provided:

I have had this contract fully explained to me, I understand it, and certify that no promise of any kind has been made to me concerning *assignment to duty, geographical area*, schooling, special programs, assignment of governmental quarters, or transportation of dependents except as indicated[.] (Emphasis added.)

No exception is stated in the contract. There is nothing ambiguous in the language of that paragraph insofar as the question of the place of the service of petitioner's obli-

gations under the contract is concerned. In the absence of any ambiguity on that point parol evidence is not competent to vary the explicit terms of the paragraph.[3] However, petitioner contends that the paragraph does not apply to petitioner's reserve obligations and that the testimony of the oral representation of the recruiting officer, uncontradicted at the trial, must be considered part of the enlistment contract as it relates to the place of his duties as a reservist. This argument cannot prevail.

The construction of the written contract as it relates to the intention of the parties is for the court. On its face the instrument purports to relate to petitioner's enlistment in its entirety, including both active and reserve status and duties. There is nothing to support the contention that paragraph 54 must be construed wholly apart from petitioner's reserve obligations. The contract is clear and unambiguous in its terms in paragraph 54 insofar as the question of the place of the service of petitioner's reserve obligations is concerned.

Moreover, while it is not necessary to the conclusion reached by the court, it is indeed doubtful that the order to petitioner to proceed from his base in Boston to Newport for the performance of ship duties, where no ship is available in Boston, could be found to be a material breach of the claimed representation of the recruiting officer.[4]

---

**3.** The petitioner apparently places principal reliance on the case of *Shelton v. Brunson*, 465 F.2d 144 (5th Cir. 1972), for the proposition that the petitioner is entitled to relief in this case if he establishes that the alleged recruitment promise was in fact made. *Shelton*, however, is distinguishable from the case at bar. In that case the Court of Appeals for the Fifth Circuit found that paragraph 54 of that petitioner's enlistment contract, identical with the one in this case, was "ambiguous to the extent of the question presented", i. e., Shelton's physical qualifications for commissioning. *Id.* at 147. Consequently, the court remanded the case and noted that if the district court determined that the parties did not intend paragraph 54 to cover the precise question in issue, then evidence to support the enlistee's claim of misrepresentation should be admitted. In the instant case, however, as noted in the text, there

is nothing ambiguous in the language of paragraph 54 insofar as any promise with regard to the place of the service of petitioner's obligations under the contract. Thus, parol evidence is not competent to vary the explicit terms of paragraph 54.

**4.** The petitioner's unit, though required to drill in Newport, was at all pertinent times Boston-based. The papers submitted by respondents indicate that the commuting distance between the petitioner's home in Hyde Park, Massachusetts and Newport, Rhode Island (orally represented by *respondents to be 86 miles*) is within the guidelines prescribed by the Department of Defense for deciding requests for reassignment in hardship drilling situations. *See* BUPERSINST 5400.42D, CH–8, ¶ 111(4)(a) (Respondents Exhibit "D").

Petitioner has not demonstrated the strong likelihood of success on the merits of his case to justify injunctive relief at this stage. Accordingly, the application for injunctive relief is denied.