**Jerome JABLON, M.D.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 79–3465.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1981.

Decided Sept. 28, 1981.

---

Michael Korn, Sherman Oaks, Cal., for plaintiff-appellant.

Lawrence B. Gotlieb, Asst. U. S. Atty., Los Angeles, Cal., argued, for defendant-appellee; Frederick M. Brosio, Jr., Asst. U. S. Atty., Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., on brief.

Before GOODWIN and REINHARDT, Circuit Judges, and TEMPLAR,* District Judge.

GOODWIN, Circuit Judge.

Jerome Jablon, a medical doctor practicing in Van Nuys, California, sued under the Tucker Act, 28 U.S.C. § 1346(a)(2), claiming $10,000 for breach of contract. He appeals a summary judgment in favor of the government.

In an effort to recruit experienced medical practitioners, the military services offer incentive payments in addition to the statutory pay and allowances scheduled for various military pay grades. A recruiting officer, whose authority is not in issue at this stage of the case, negotiated with Dr. Jablon on behalf of the Air Force. Dr. Jablon agreed to accept a commission as a Lieutenant Colonel in the Air Force for a period of three years at an annual salary of approximately $37,000 and a bonus of $27,000 to be payable in installments beginning upon entry on active duty.

Dr. Jablon completed the necessary paperwork and received a commission as a Lieutenant Colonel in the Air Force Reserve on December 1, 1975. Shortly after he was commissioned, he received orders to report for active duty on February 5, 1976. He sold both his medical practice and his house.

Early in January 1976, Dr. Jablon was arrested by California officers for an alleged violation of local laws regulating prescription drugs. On January 20, the Air Force revoked Dr. Jablon's active duty orders. The Air Force later advised him that active duty orders would not be forthcoming. Sometime in June 1976, the state charges were dismissed. The Air Force did not reinstate the active duty orders.

Dr. Jablon commenced an action in state court for damages he claimed to have sustained in consequence of the criminal charges. He also commenced this action in the district court for damages flowing from his change of position in reliance on his expectation of active duty. Dr. Jablon first sued on a tort theory but, after preliminary motions, filed an amended complaint and attached the papers that are now before the court. He now asserts a contract claim, with all damages in excess of $10,000 waived in order to remain in district court. In addition to his contract theory, Dr. Jablon is also asserting a right of recovery based upon promissory estoppel. The government moved for summary judgment. The district court granted the motion and Dr. Jablon appeals.[1]

---

*The Honorable George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

1. Dr. Jablon argues that this court should reverse the district court because it decided the case on grounds not advanced by the government. He argues that the government did not assert, and he did not respond to, an assertion that there was no genuine issue of material fact. He contends that the government requested the court to dismiss for lack of jurisdiction. Actually, the motion and supporting papers confused Rule 12 dismissal with summary judgment, asserting that "there is no claim stated for which relief can be granted." Dr. Jablon received these papers on May 4, 1979, and responded on May 30, 1979. He had ample notice that the government was moving for summary judgment on grounds other than lack of jurisdiction. We have held on numerous occasions that a final judgment correctly

### I. *The Contract Claim.*

█ Dr. Jablon's contract claim does not fit easily into a contract theory. A soldier's entitlement to pay depends upon statutes and regulations rather than upon ordinary contract principles. *See United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977); *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). The district court granted the summary judgment against Dr. Jablon's contract claim on the basis of the cited cases. The applicable statutes and regulations did not confer on Dr. Jablon any entitlement to Variable Incentive Pay.[2]

On the other hand, neither the parties nor the trial court mentioned cases applying modern contract principles to some enlistment contracts.[3] But none of the enlistment contract cases we have found involved a claim for damages. The plaintiffs all sought to be discharged from the armed services; *i. e.,* to rescind the contract.

█ The district court correctly held that Dr. Jablon is not entitled to his Variable Incentive Pay and cannot recover it in an action upon a contract. *See generally, Larionoff, supra,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48. Dr. Jablon's Variable Incentive Pay agreement is part of his enlistment contract and would be governed by contract principles were Dr. Jablon seeking release from the Air Force Reserves because of the alleged misrepresentation. *See generally, Shelton v. Brunson,* 465 F.2d 144 (5th Cir. 1972). The question we have before us, however, is whether Dr. Jablon is entitled to money damages resulting from the breach of his Variable Incentive Pay agreement.

We have examined the cases and underlying policy considerations and have concluded that money damages are not an available remedy for the government's breach of an enlistment contract. *Larionoff* and *Bell* reflect the Supreme Court's determination that Congress did not intend for the United States to be liable for money awards to soldiers unless Congress specifically so provided. A soldier is not paid on contract principles, *i. e.,* representations of officers upon which the soldier relied. Instead, authorization for money paid to soldiers must come directly from Congress or its duly authorized agency. *See generally, Larionoff, supra,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48.

terminating groundless litigation would be affirmed if any grounds exist in the record for affirming. *Accord, Massachusetts Mut. Life Ins. Co. v. Ludwig,* 426 U.S. 479, 481, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976).

**2.** Under both the Variable Incentive Pay agreement and the pertinent regulations, any right to receive the incentive bonus payment was conditioned upon entry upon active duty, an event that never occurred. *See United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977). The relevant regulations in this case are Department of Defense Directive No. 1340.11 ¶¶ IIA and IIIJ (Sept. 12, 1974). The Directive specified that Variable Incentive Pay Agreements apply only to officers; and "officer" is defined as an officer on active duty.

**3.** *Sidoran v. United States,* 550 F.2d 636 (Ct.Cl. 1977), *overruled on other grounds, Deering v. United States,* 620 F.2d 242 (Ct.Cl.1980) (no breach of contract because condition was met); *Peavy v. Warner,* 493 F.2d 748 (5th Cir. 1974) (habeas corpus action to cancel re-enlistment based on oral representations); *Johnson v. Chafee,* 469 F.2d 1216 (9th Cir. 1972), cert.

denied, 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973) (habeas corpus action for failure to have enlistment validly executed or government's failure to perform); *Shelton v. Brunson,* 465 F.2d 144 (5th Cir. 1972) (case remanded to allow the plaintiff to show misrepresentations in his enlistment contract entitling him to discharge); *Dubeau v. Commanding Officer, Naval Reserve,* 440 F.Supp. 747 (D.Mass.1977) (habeas corpus denied because plaintiff signed contract stating no representations regarding the location of active duty assignment were made); *Jones v. Watkins,* 422 F.Supp. 1268 (N.D.Ga.1976) (no breach of enlistment contract entitling plaintiff to discharge because there was a need for dentists—the contract condition); *Novak v. Rumsfeld,* 423 F.Supp. 971 (N.D.Cal.1976) (plaintiff was entitled to discharge because the Navy did not honor its contract); *United States ex rel. Roman v. Schlesinger,* 404 F.Supp. 77 (E.D.N.Y.1975) (no discharge because the Navy did not intentionally mislead the plaintiff); *Matzelle v. Pratt,* 332 F.Supp. 1010 (E.D.Va.1971) (no discharge because the late tender of incentive pay was not a material breach).

There is a significant difference between the court's power to order the armed services to discharge a soldier because the military has breached the conditions under which he or she enlisted and the power to order the government to pay damages for breach of a contract which the court would have no authority to enforce.[4] The traditional distinction between negative and mandatory action may be eroding, but in this case the distinction is important.

An additional consideration is that the armed services should not be encouraged to assign soldiers or to base active duty calls upon considerations of potential liability. Currently, such essentially military decisions are entirely discretionary and are not subject to review by the courts. *See* 10 U.S.C. § 672(d) and *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842, *reh. denied*, 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953). Military administrative decisions are subject to review only where there is a statutory entitlement to compensation or where there is a court martial conviction or discharge which was not accomplished in accordance with the Constitution, military law or statute. *Schlanger v. United States*, 586 F.2d 667 (9th Cir. 1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); *Covington v. Anderson*, 487 F.2d 660 (9th Cir. 1973).

If we were to hold the armed services liable for damages when administrative decisions are in conflict with enlistment agreements, the military decision-making process would be reviewed by civilian judges. Civilian review of military pay claims is inconsistent with the policy which allows Congress to raise armies and then to delegate to the military wide discretion within the enabling legislation. Dr. Jablon is not entitled to damages in a civilian court for breach of his recruitment agreement.

## II. The Estoppel Claim.

■ The estoppel theory raised by Dr. Jablon also presented the district court with a difficult question. Dr. Jablon has alleged, and offered to prove, that the recruiter promised him that the incentive pay was payable upon his taking the oath of office (rather than upon his entry on active duty). It is virtually undisputed that Dr. Jablon changed his position in reliance upon the promised incentive payment. It is also virtually undisputed that the recruiter expected Dr. Jablon to rely on the promise. Dr. Jablon accordingly contends that he satisfies the requirements for estoppel against the government, as stated by this circuit:

"(1) The party to be estopped must know the facts;

"(2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

"(3) The latter must be ignorant of the true facts; and

"(4) He must rely on the former's conduct to his injury." *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978), *cert. denied*, 442 U.S. 917 [99 S.Ct. 2838, 61 L.Ed.2d 284] (1979) (and cases cited therein).

*But see Cooper v. Bell*, 628 F.2d 1208 (9th Cir. 1980) (requiring that the ignorance be reasonable).[5]

---

**4.** The court could not order that Dr. Jablon be paid his Variable Incentive Pay, allegedly promised, because entitlement to pay is based solely on statutes and regulations. *See United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Nor could the court order the Air Force to call Dr. Jablon to active duty so that he *would* be entitled to his Variable Incentive Pay. *See Covington v. Anderson*, 487 F.2d 660 (9th Cir. 1973).

**5.** The district court concluded that Dr. Jablon was not entitled to prevail on a theory of estoppel because he had not established affirmative misconduct. None of our estoppel cases, how-

ever, requires that the government agent *intend* to mislead a party. Affirmative misconduct for equitable estoppel purposes can be present when the government acted (gave incorrect information, e. g.) rather than failed to act (failed to warn someone that his or her conduct is illegal). *See Lavin v. Marsh*, 644 F.2d 1378 at 1384 (9th Cir. 1981) (no estoppel shown where the Army merely failed to determine pension eligibility or counteract misunderstanding); *Cooper v. Bell*, 628 F.2d 1208, 1214 (9th Cir. 1980) (EEOC case reversed and remanded for a hearing on whether EEOC officer told plaintiff that white males could not file charges.

At first blush, Dr. Jablon's argument is attractive. The cases he cites have allowed estoppel to be employed against the government, despite a longstanding tradition against estopping the government.[6] *See Morris v. Andrus*, 593 F.2d 851 (9th Cir. 1978), *cert. denied*, 444 U.S. 863, 100 S.Ct. 133, 62 L.Ed.2d 86 (1979) (held, although estoppel sometimes can be available against the government, there was no such misrepresentation as to entitle plaintiff to government land); *United States v. Wharton*, 514 F.2d 406 (9th Cir. 1975) (held, plaintiffs are entitled to the land in an ejectment action because they had been given false information as to whether they could file for it under the Desert Land Entry Act); *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973) (held, that appellees were entitled to retain funds paid them pursuant to a government contract even though the contract was prohibited by regulations).

Dr. Jablon's argument does not distinguish between equitable estoppel and promissory estoppel. The cases he cites are equitable estoppel cases, although his theory of recovery is based upon promissory estoppel.

Black's Law Dictionary (5th ed. 1980) defines "equitable estoppel" as:

"The doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right *which he otherwise would have had....*" p. 483 (Emphasis added.)

"Promissory estoppel," in contrast, is defined as:

"That which arises when there is a promise which promisor should reasonably expect to induce action or forbearance of a definite and substantial character on part of promisee, and which does induce such action or forbearance, and such promise is binding if injustice can be avoided only by enforcement of promise...." p. 1093

The difference between the doctrines can best be explained by observing that promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. Promissory estoppel is a sword, and equitable estoppel is a shield.

Equitable estoppel has been used in numerous cases marked by evidence of the government's affirmative misconduct. Equitable estoppel has been used to prohibit the government from asserting its own theory of recovery, or from asserting a theory which would undermine the plaintiff's cause of action. *See Cooper v. Bell*, 628 F.2d 1208 (9th Cir. 1980) (held, remand to determine whether the U.S. was estopped from asserting filing deadlines to plaintiff's EEOC claim); *Sun Il Yoo v. Immigration & Natu-*

Government could be estopped from raising filing deadline as a barrier); *Simon v. Califano*, 593 F.2d 121, 123 (9th Cir. 1979) (no estoppel against HEW for benefits not applied for because neglect of duty was all that was involved, not affirmative misconduct); *United States v. Ruby Co.*, 588 F.2d 697, 704 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) (no affirmative *misconduct* in this case to quiet title of land missurveyed by government agent so as to trigger estoppel); *California Pacific Bank v. Small Business Admin.*, 557 F.2d 218, 225 (9th Cir. 1977) (no estoppel based upon implications drawn from government silences and failure to respond to illegality); *Morris v. Andrus*, 593 F.2d 851, 854 (9th Cir. 1978), *cert. denied*, 444 U.S. 863, 100 S.Ct. 133, 62 L.Ed.2d 86 (1979) (no estoppel based upon the government's failure to warn of illegality; moreover, government was unaware of the illegality for some period); *Santiago v. Immigration & Naturalization Service*, 526 F.2d

488, 491–93 (9th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976) (en banc) (not entirely clear, but probably no estoppel because only a failure to inform plaintiff was involved); *United States v. Wharton*, 514 F.2d 406, 412 (9th Cir. 1975) (estoppel granted where government agent gave incorrect information because he should have known plaintiff would act on it); *United States v. Lazy FC Ranch*, 481 F.2d 985, 989–90 (9th Cir. 1973) (estoppel granted where US affirmatively misrepresented facts).

6. *See United States v. Ruby Co.*, 588 F.2d 697, 701–703 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) for an excellent discussion of the cases which held that equitable estoppel was not available against the government, and the manner in which the rule was eroded.

*ralization Service,* 534 F.2d 1325 (9th Cir. 1976) (held, the government was estopped from deporting plaintiff for his failure to comply with certain labor provisions where the government itself did not process the relevant information); *United States v. Wharton,* 514 F.2d 406 (9th Cir. 1975) (held, plaintiffs not ejected because they were told (incorrectly) that they could not file for the land); *Fox v. Morton,* 505 F.2d 254 (9th Cir. 1974) (held, Indian plaintiffs entitled to a due process hearing. Bureau of Indian Affairs was estopped from denying that the work program was "general assistance" for termination purposes). In those cases where the plaintiff sued the government, the plaintiff possessed a cause of action and the estoppel was used as a shield against a

government claim that would have defeated recovery.[7]

Dr. Jablon's "estoppel theory" is not an equitable estoppel theory. He is not attempting to bar the government from raising a defense to an independent cause of action which he is asserting.[8] Instead, he is relying on promissory estoppel to *create* his right of recovery. Thus, the "estoppel" of which he speaks is *promissory estoppel.* The equitable "estoppel" cases he cites are inapposite.

We have not discovered, and the parties have not cited, any precedent in this circuit for an independent cause of action against the government founded upon promissory estoppel.[9] Neither have we discovered a

7. No Ninth Circuit cases have held that the plaintiff recovers, or is allowed to pursue recovery, on a promissory estoppel theory. Several cases, however, have found that the facts do not support an equitable estoppel theory where the estoppel in question is arguably "promissory estoppel" rather than "equitable estoppel." *See, e. g., Lavin v. Marsh,* 644 F.2d 1378, (9th Cir. 1981) (plaintiff trying to rely on government actions to *create* a right to a military pension); *Vickars-Henry v. Board of Governors, Etc.,* 629 F.2d 629 (9th Cir. 1980) (plaintiff trying to rely on government actions to *create* a beneficial I.R.S. classification; no affirmative misconduct found); *Union Oil Company of California v. Morton,* 512 F.2d 743 (9th Cir. 1975) (because of public interest plaintiffs were unable to rely on government leases to create a right to off-shore drilling where there existed a statute to the contrary); *United States v. Consolidated Mines & Smelting Co., Ltd.,* 455 F.2d 432 (9th Cir. 1971) (letter from United States was not a basis for allowing mining to continue on Indian lands after the government determined that no mining would be allowed).

   Because there is no indication in these cases that the question whether to apply promissory or equitable estoppel was before the court, we do not view these cases as prohibiting a promissory estoppel approach.

8. Dr. Jablon is not using estoppel to bar the government from raising a defense to his underlying theory of recovery. As discussed above, Dr. Jablon has neither a contract claim for damages nor a statutory entitlement to the Variable Incentive Pay. The government is not raising a defense to its obligation to pay Dr. Jablon's Variable Incentive Pay; it is saying there *is* no entitlement. *Cf. Cooper v. Bell,* 628 F.2d 1208 (9th Cir. 1980) (estoppel was available to prevent the government from raising as a

defense the plaintiff's failure to comply with nonjurisdictional filing deadlines). If the deadline in *Cooper* had been a jurisdictional requirement, the plaintiff would not have been able to rely on an estoppel theory because the *estoppel* itself, rather than Title VII, would have created the underlying cause of action and accompanying jurisdiction.

9. Nor have we found cases in other circuits that actually awarded the plaintiff money damages against the United States on a promissory estoppel theory. A few cases have suggested that recovery on a promissory estoppel theory is available. In *Reamer v. United States,* 532 F.2d 349 (4th Cir. 1976), for example, the Fourth Circuit held that an Army enlistee could not insist that his active duty be delayed until after he finished a semester of school, despite oral assurances that he would not immediately be called to active duty. The plaintiff had asserted a promissory estoppel theory, citing the Restatement of Contracts. The court rejected the argument, but not the availability of the theory saying:

   " . . . The essence of [our] denial of the contract claim is that no promise of a delay was made. Furthermore, even *if* the contract were technically construed to contain a promise, the defendants could not reasonably have expected the plaintiff to rely, and the plaintiff could not reasonably have relied, on the statement in paragraph 56 after he had been twice told that permission for the delay must come from higher authorities." *Id.* at 352.

   In *Kaye v. United States,* 467 F.2d 415 (D.C.Cir. 1972), the court remanded to allow a law student to prove that he relied on the government's promise to have a security clearance ready so that he could start work. Kaye was seeking damages for loss of his expected sum-

statute which would allow Dr. Jablon to sue the United States in this instance.[10] The Tucker Act [11] allows actions founded upon express or implied-in-fact contracts. *See Merritt v. United States*, 267 U.S. 338, 340–41, 45 S.Ct. 278, 69 L.Ed. 643 (1925); *Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 498 (Ct.Cl.1978); *Boccardo v. United States*, 341 F.Supp. 858, 863 (N.D.Ca.1972). The Tucker Act does not confer jurisdiction on implied-in-law contracts. *See Knight Newspapers, Inc. v. United States*, 395 F.2d 353 (6th Cir. 1968); *Moore, supra*, at p. 700.109.

Dr. Jablon's promissory estoppel theory is not included within the parameters of the Tucker Act because it is not an "express or implied-in-fact contract" theory. Although the commentators do not agree as to the nature of the promissory estoppel cause of action, it cannot be characterized merely as an "express or implied-in-fact" contract.[12] Moreover, our research reveals no cases con-

struing the Tucker Act that have included awards based upon a promissory estoppel theory. We therefore conclude that the government has not waived its sovereign immunity with regard to a promissory estoppel cause of action.

Because we have held that a plaintiff may not sue the United States for money damages under an enlistment contract, and because the United States has not waived its sovereign immunity with regard to a promissory estoppel cause of action, the district court judgment is affirmed.

Affirmed.

REINHARDT, Circuit Judge, concurring.

I concur in the result. I agree that there was no breach of any statute or regulation; nor was there a breach of the Variable Incentive Pay agreement. That, in my opinion, fully disposes of the issues discussed in section I of the opinion (the Con-

---

mer earnings. The court decided that Kaye should be allowed to prove "the existence of a subsidiary promise by the Government to exercise its best efforts in good faith to complete or to have completed the security clearance with regard to Kaye as reasonably promptly as possible.... Additionally, Kaye was entitled to the opportunity to establish that the Government induced Kaye's reliance by its implied promise and that therefore the Government cannot be permitted to avoid its duty to perform under that promise...." *Id.* at 418–19. In *Putnam Mills Corporation v. United States*, 432 F.2d 553 (2nd Cir. 1970), the court held that it was without jurisdiction because the claim was in excess of $10,000 but said in dicta that the plaintiff might have a promissory estoppel claim against the government for loss of its loan money because the Small Business Administration agreed to hold the money in escrow.

None of the above cases discussed the sovereign immunity problem involved in allowing recovery against the United States on a promissory estoppel theory.

**10.** Sovereign immunity prevents the United States from being sued without its consent. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); 1 Moore's Federal Practice ¶ 0.65[2.–1] (noting that the United States' liability for money damages is governed wholly by statute).

**11.** The Tucker Act, 28 U.S.C. § 1346, provides in pertinent part:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

.   .   .   .

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States."

**12.** *See, e. g.*, J. Calamari and J. Perillo, *Contracts*, §§ 6–12 and 6–13 (2d ed. 1977) (and authorities cited therein); A. Corbin, *Corbin on Contracts*, One Volume Edition, §§ 193–208 (1952); E. Murphy and R. Speidel, *Studies in Contract Law*, pp. 384–424 (2d ed. 1977).

tract Claims). I also agree that estoppel does not afford a basis for monetary relief against the United States *where the claim arises out of an alleged misrepresentation by a military recruiting officer.* Military recruitment is, for many reasons, *sui generis.* Courts view the process of transforming civilians into military personnel "in the military and national defense context." *Rostker v. Goldberg,* —— U.S. ——, ——, 101 S.Ct. 2646, 2651–52, 69 L.Ed.2d 478 (1981). Constitutional and other legal rights are viewed differently when they arise in that context. This court has recently said, for example, that governmental decisions as to eligibility to serve in the military may be made for reasons which would be unconstitutional were civilian government employment at issue. *Beller v. Middendorf,* 632 F.2d 788, 810–812 (9th Cir. 1980). Accordingly, I would reject Dr. Jablon's estoppel claim on the ground that it arises in a military context, and would defer to a more appropriate occasion any general discussion of the availability of promissory estoppel against the government.