# 280

Michael N. **ALLEY**

v.

The **UNITED STATES.**

No. 167–83C.

United States Claims Court.

June 8, 1984.

J. Byron Holcomb, Siqueland & Holcomb, Seattle, Wash., for plaintiff.

Eileen P. Fennessy, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

COLAIANNI, Judge.

This case is before the court, without oral argument, on plaintiff's motion for summary judgment and defendant's motion to dismiss, or in the alternative, its cross-motion for summary judgment. Plaintiff alleges that, by releasing him from active duty on September 30, 1982, defendant breached an active duty agreement that had extended plaintiff's term of service until June 30, 1984. Upon review of the parties' submissions, the court finds that there are no material facts in dispute and that plaintiff is entitled to judgment as a matter of law.

### Facts

Plaintiff enlisted in the United States Naval Reserve on May 20, 1963. He served as a drilling reservist until August 1965, at which time he was called to active duty. In July 1967, he returned to his position as a drilling reservist until his enlistment in the regular Navy on March 29, 1968. He was ordered to active duty and remained on active duty until July 8, 1978, on which date he returned to the Naval Reserve. Plaintiff returned to active duty in the Naval Reserve on August 17, 1978, where he remained until his involuntary discharge on September 30, 1982.[1]

In June 1981, while on active duty as a Naval Reserve Canvasser Recruiter in pay grade E–7 at the Naval Reserve Center in Seattle, Washington, plaintiff was selected for promotion to pay grade E–8. His official advancement for pay purposes was delayed because no vacancy was immediately available. Plaintiff was "frocked" to E–8,

---

1. Plaintiff reenlisted in the Naval Reserve on May 18, 1983, for six years as a member of the individual Ready Reserve, a nondrill and non-pay position.

however, upon his selection. This entitled him to wear the uniform and insignia and to hold billets associated with the rank, but it did not entitle him to the pay or allowances of an E–8.

On June 16, 1982, plaintiff reported to the personnel office at the Naval Support Activity, Seattle, Washington, to execute the necessary documents for promotion. Navy regulations required that plaintiff have at least 24 months of active duty service obligation remaining at the time of advancement. Plaintiff had, however, approximately three months left on his previous active duty agreement, which was due to expire on September 30, 1982. He therefore was required to extend his active duty service obligation for 21 months, to become operative on October 1, 1982. The June 16 active duty agreement, Form NAVPERS 1070/622, obligated plaintiff to remain on active duty until June 30, 1984. Under the section entitled "Narrative Reason And/or Authority," the following statement was typed: "I understand this extension remains binding and may not thereafter be cancelled except as provided in the MILPERSMAN [the Naval Military Personnel Manual]." Both parties signed the agreement,[2] and beginning on that day plaintiff's salary was increased to the E–8 rate of pay. No extension of plaintiff's underlying enlistment in the Naval Reserve was signed, however. At the time of execution of the June 16 agreement, the parties understood that plaintiff's service during the additional 21-month period would continue as a temporary active duty Canvasser Recruiter.

On August 17, 1982, the Commander, Naval Military Personnel Command (Commander), approved the recommendation of plaintiff's commanding officer, Capt. J.R. Geaney, that plaintiff's recruiter status be renewed until September 30, 1983. On August 30, 1982, however, Captain Geaney withdrew his recommendation. On September 1, 1982, the Commander approved the withdrawal. On September 30, 1982, plaintiff's previous active duty agreement, his orders, and his underlying reserve enlistment all expired. Despite the active duty agreement entered on June 16, to be effective on October 1, plaintiff was discharged.

On October 30, 1982, plaintiff applied for severance pay. That application was denied on December 15, 1982. Plaintiff filed the present action on March 22, 1983.

### Discussion

■ The active duty agreement executed on June 16, 1982, by plaintiff and defendant's designated agent[3] was a bilateral contract committing both parties to the extension of plaintiff's period of active duty for 21 months beyond his "normal expiration of active obligated service date." With that extension, plaintiff's obligated period of active duty would expire on June 30, 1984. The agreement unequivocally stated, "this extension remains binding and may not thereafter be cancelled except as provided in the MILPERSMAN." Nothing in the agreement indicated that it was conditioned on the execution of any other agreement or form. The two issues that are determinative of this case concern (1) the nature of the June 16 contract, and (2) its scope and conditions.

■ First plaintiff argues that the agreement was a contract of the type authorized by 10 U.S.C. § 679(a).[4] He contends that, in releasing him as it did, de-

---

**2.** The court assumes that the Navy's signatory, Chief Personnelman C.J. Talbert, was a duly authorized agent with full authority to execute the agreement. Defendant has not suggested otherwise.

**3.** Defendant argues that the agreement was subject to the approval of plaintiff's commanding officer. However, MILPERSMAN 1050200(5) provides for signing by "the commanding offi-

cer *or a designated representative of the commanding officer.*" (Emphasis supplied.)

**4.** Section 679(a) grants authority and imposes conditions for active duty agreements with members of the reserves, as follows:
    To provide definite terms of active duty (other than for training) for Reserves with their consent, the Secretary concerned may make a standard written agreement with any member of a reserve component under his

fendant failed to follow the procedural requirements of § 680(a),[5] which address the involuntary release of a reservist during the term of a § 679(a) agreement. Therefore, his discharge was invalid.[6]

A review of the requirements of § 680, along with a comparison of plaintiff's June 16 agreement with the standard written agreement (SWAG) used by the Navy for its active duty contracts with reserve officers, demonstrates however that plaintiff's agreement was not one pursuant to the provisions of §§ 679–680.[7] In order for the protections of these sections to apply,

§ 680(a) requires that its terms be explicitly incorporated into the agreement.[8]

The SWAG, entitled "Contract for Active Duty for Reserve Officers," Form NAVPERS 1120/14 (11–79), is quite detailed and specifically incorporates the provisions required by § 680(a).[9] In contrast, the June 16 agreement executed by the parties provided for no more than the extension of plaintiff's active duty service obligation through June 30, 1984, with the notation that "this extension * * * may not * * * be cancelled except as provided in the MILPERSMAN."

jurisdiction requiring the member to serve for a period of active duty (other than for training) of not more than five years. When such an agreement expires, a new one may be made. This subsection does not apply in time of war declared by Congress.

**5.** Section 680(a) provides:

Each agreement made under section 679(a) of this title shall provide that the member may not be released from active duty without his consent during the period of the agreement—

(1) because of a reduction in the actual personnel strength of the armed force concerned, unless the release is in accordance with the recommendation of a board of officers appointed by an authority designated by the Secretary concerned to determine the members to be released from active duty under regulations prescribed by the Secretary; or

(2) for any other reason, without an opportunity to be heard by a board of officers before the release, unless he is (A) dismissed or discharged under the sentence of a court-martial, (B) released because of an unexplained absence without leave for at least three months, (C) released because he is convicted and sentenced to confinement in a Federal or State penitentiary or correctional institution and the sentence has become final, or (D) released because he has been considered at least twice and has not been recommended for promotion to the next higher grade or because he is considered as having failed of selection for promotion to the next higher grade and has not been recommended for promotion to that grade, under conditions that would require the release or separation of a Reserve Officer who is not serving under such agreement.

**6.** If §§ 679–680 are inapplicable, the general provisions of § 681(a) govern a Reserve's release from active duty. That section states: "Except as otherwise provided in this title, the Secretary concerned may at any time release a

Reserve under his jurisdiction from active duty."

**7.** While by their terms §§ 679–680 are not limited to active duty agreements with reserve officers, in practice they have been. Although plaintiff was not an officer, he argues that the June 16 agreement was of the type contemplated by §§ 679–680.

**8.** Section 680(a) states: *"Each agreement* made under section 679(a) of this title *shall provide* * * *."* (Emphasis added.)

**9.** For example, under Part 2, entitled "Involuntary Release from Active Duty," the SWAG provides:

"(a) Contractor shall not be released from active duty involuntarily during the period herein specified:

(i) by reason of a reduction in numerical strength of the military personnel of the Armed Force of the United States concerned unless his release is in accordance with the recommendation of a board of officers appointed by competent authority to determine the members to be released from active duty; or

(ii) for reasons other than that prescribed in paragraph (i) above without an opportunity to be heard by a board of officers prior to such release, unless such release from active duty is pursuant to sentence of a court-martial, unexplained absence without leave of three months duration, final conviction and sentence to confinement in a Federal or State penitentiary or correctional institution or having been considered at least twice and not recommended for promotion to the next higher pay grade or considered as having failed of selection for promotion to the next higher grade and not recommended for promotion to that grade; under conditions that would require the release or separation of a Reserve Officer who is not serving under such an agreement."

With some minor differences in phraseology, this language mirrors that of § 680(a).

In addition, the text of the SWAG begins with the statement:

This agreement is entered into pursuant to the provisions of Title 10 U.S.C., Sections 679 and 680 (As amended), between the United States of America, represented by the officer signing this agreement, and the above named Contractor [the reserve officer] * * *.

The June 16 agreement contained no such statement.

█ That the June 16 agreement did not grant plaintiff the protections of § 680, however, is not dispositive. The June 16 agreement was irrevocable "except as provided in the MILPERSMAN." As authority for releasing plaintiff, defendant points to MILPERSMAN 3840220.3, which provides:

3. In time of peace, except as otherwise provided herein, a member of the Naval Reserve may be released from active duty at any time by the Commander, Naval Military Personnel Command in accordance with the provisions of this Manual or other NMPC directives.

This article does not grant the plenary authority for which defendant argues, however. Like the June 16 agreement, it requires that a reserve's release be obtained in accordance with the provisions of the MILPERSMAN and applicable regulations. Those provisions grant enlisted reserves at least minimal protections.

MILPERSMAN 1050180(4) allows "Commanding officers * * * to cancel active duty agreements under the same conditions as provided for cancellation of extensions of enlistment." The provisions governing cancellation of enlistment extensions are found in MILPERSMAN 1050150. Part 8 of that article bars cancellation of "a valid extension * * * that has become operative." Part 9 lists specific instances in which "Commanding officers shall cancel agreements to extend enlistments, prior to

operative date * * *." Among these instances are desertion, absence without leave, reenlistment, and physical disqualification. Subpart (g), which most closely approximates plaintiff's situation, provides for cancellation:

[w]hen the extension resulted in no significant benefit to a member no longer recommended for reenlistment because of * * * unsatisfactory performance of duty or conduct, and who, in the opinion of the commanding officer, lacks career potential. A full statement of the facts shall be included in a Page 13 service record entry with notation that the member is not recommended for reenlistment. *When cancellation* of an agreement to extend *is recommended under the above provision but a significant benefit resulted from the extension,* e.g., * * * advancement, *the case shall be forwarded to the Commander, Naval Military Personnel Command for determination* in time to permit a decision prior to the operative date.

(Emphasis added.) [10]

Plaintiff's commanding officer, Captain Geaney, and the Commander, Naval Military Personnel Command, failed to follow these provisions for cancellation of the June 16 active duty agreement. Rather, Captain Geaney attempted to cancel the agreement by merely withdrawing his recommendation for plaintiff's continuation. This was accomplished by a transmittal on August 30, 1982, which read in full:

Subj: Naval Reserve Canvasser Recruiter Recommendation Withdrawal ICO ISCS Michael N. ALLEY, USNR–R, 459–72–0994 (BSC 30660)

Ref: (a) NAVMILPERSCOMINST [Naval Military Personnel Command Instruction] 1001.1

1. In accordance with reference (a), I am hereby withdrawing my previous recommendation for continuation of ISCS Michael N. ALLEY, USNR–R, 459–72–

---

10. Although it does not appear in the August 30 letter of Captain Geaney, defendant indicates that plaintiff was no longer being recommended for reenlistment because of an unsatisfactory performance evaluation by Captain Geaney. In this instance, however, the extension would have resulted in significant benefit to plaintiff because he was being advanced in grade. Under these circumstances, subpart (g) required a decision by the Commander.

0994 (BSC 30660) for continuation as a Naval Reserve Canvasser Recruiter beyond 30 September 1982.

On September 1, 1982, the Commander, Naval Military Personnel Command, responded: "AS REQ BY REF A, CITE THIS MSG AS AUTH AND MODIFY PARA 1 REF 3 DELETE ISCS N. [sic] N. ALLEY, 459–72–0994." The Commander gave no reason for this response, nor did Captain Geaney offer one for his withdrawal of the previous recommendation. The Commander made no "decision" or "determination," as those terms must fairly be understood under MILPERSMAN 1050150, to cancel plaintiff's active duty agreement. Thus, the cancellation was ineffective.

But even if a determination by the Commander had been rendered, it still would have been ineffective to cancel plaintiff's continuation. Naval Military Personnel Command Instruction 1001.1 (Instruction), upon which Captain Geaney and the Commander based their authority to discontinue plaintiff, provides "guidelines for the administration of the Naval Reserve Canvasser Recruiter Program." Part 6 of the Instruction concerns procedures and deadlines for continuing or discontinuing the enlistment of reserve canvasser recruiters. First, the recruiter's commanding officer must submit a recommendation for continuation or noncontinuation "not later than 1 July each year." In addition,

> [c]ommanding officers are advised that marginal performers *should be counseled not later than 1 April* to enable a definite recommendation by 1 July. Recruiters who do not meet current performance or production standards *shall be so notified* in writing, by their commanding officer with a copy to the Chief of Naval Reserve (Code 213), *not later than 1 July.*

(Emphasis added.) The Instruction requires the Naval Military Personnel Command to issue, "not later than September 1," directives authorizing the continuation of listed personnel for the subsequent year.

These procedures, at least in part, serve to protect the recruiters with fair notice of their tenure with the program. After initially recommending plaintiff for continuation, Captain Geaney withdrew his recommendation on August 30, almost two months after the final date by which he was required to notify plaintiff of a discontinuance. Captain Geaney's attempt to withdraw his recommendation for continuance and the Commander's subsequent approval were therefore ineffective to terminate plaintiff's enlistment or to cancel the June 16 active duty agreement.

### Conclusion

The court finds that the agreement entered on June 16, 1982, by plaintiff and the Navy constitutes a contract binding on both parties. Plaintiff's discharge, in violation of governing regulations, was ineffective and therefore his motion for summary judgment IS GRANTED.

Defendant IS HEREBY ORDERED to reinstate plaintiff to active duty, and to correct his military records to show continuous active duty service, through June 30, 1984. Defendant shall also compensate plaintiff for pay and allowances due for that period of obligated active duty service, with proceedings to determine the amount of recovery to be conducted pursuant to Rule 42(c).