Michael N. **ALLEY**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 167–83C.

United States Claims Court.

Sept. 11, 1984.

---

ORDER DENYING DEFENDANT'S MOTION FOR VACATION OR MODIFICATION OF OPINION ENTERED JUNE 8, 1984

WIESE, Judge.

This matter comes before the court on defendant's motion of June 18, 1984 "For Rehearing or, in the Alternative, for Amendment of the Decision" that was entered in this case by Judge Colaianni on June 8, 1984. 5 Cl.Ct. 280.[1] The decision

---

**1.** Judge Colaianni resigned from the bench on June 8, 1984, to reenter the private practice of law. The case was transferred to the under-

signed by Order of the Chief Judge on August 15, 1984.

in question holds that plaintiff, an enlisted member of the United States Naval Reserve, is entitled to reinstatement, correction of records and back pay where the Navy effected his discharge without undertaking the necessary "decision" or "determination" that was required, by regulation, for the cancellation of a member's active duty agreement. The Government's motion seeks rehearing on the ground that the court was without jurisdiction to grant relief; alternatively, should jurisdiction be upheld, the Government asks that the opinion be amended "to delete all references to the [member's] * * * active duty agreement as a contract * * *". This court, having heard oral argument on the Government's motion, now DENIES the same for the reasons that follow:

A. *The Jurisdictional Issue:* The jurisdictional problem which the Government raises centers on the fact that the "Agreement to Remain on Active Duty" which the parties executed in this case contemplated an extension of plaintiff's active service for a fixed term to begin on October 1, 1982, the day after his then-current active duty agreement and his underlying enlistment agreement in the Naval Reserve were due to expire. Presumably, the enlistment period too was meant to be extended (*i.e.*, renewed) for, as the Government points out, enlistment in an armed force is a necessary prerequisite to the performance of active service in such force.

■ The enlistment period, however, was not extended and therein lies the problem. The Government argues that enforcement of the active service agreement (which, in essence, was the relief which Judge Colaianni's opinion granted) was wrong, jurisdictionally speaking, because that relief either ignored the necessity for (and here the absence of) an underlying enlistment agreement or else simply assumed that the active duty agreement carried with it a right of reenlistment. In either case, the point the Government argues is that the court was without authority to act in the matter: it could not ignore the statutory requirement for enlistment

nor could it usurp the Secretary's power to approve (or reject) applications for reenlistment.

Neither of the claimed deficiencies is present in the court's decision. Taking the decision as a whole and reading it in light of the record upon which it was based, it is apparent that Judge Colaianni was as much persuaded by what the record did not say as by what it did.

Notably, there is nothing in the record to suggest that the absence of an agreement extending plaintiff's enlistment period was due to other than administrative oversight. Equally significant too is that the Government made no claim that plaintiff could have repudiated his active duty extension agreement for lack of any corresponding extension of his underlying enlistment period. The agreement extending plaintiff's active duty was entered into in order to qualify plaintiff for promotion (an advancement which he, in fact, received) and it specifically recited "this extension remains binding and may not thereafter be cancelled except as provided in the MILPERSMAN [Military Personnel Manual]."

In light of these considerations, Judge Colaianni saw fit to characterize the active duty agreement as one that extended plaintiff's "term of service". That phrasing—"term of service"—bespeaks the court's recognition that an extension of plaintiff's enlistment period was as much the intended consequence of the parties' actions as was their execution of the extension of plaintiff's active duty period. The decision which prompted the Navy to promote plaintiff and to enter into an agreement which would have extended the period of his active service necessarily encompassed the discretionary determination that he was a proper candidate for reenlistment.

This much the Government does not dispute. But the issue, it contends, is not whether plaintiff's qualifications for extension of enlistment could logically be inferred from the extension of his term of active service. Rather, the critical inquiry is whether the *authority* necessary to conclude a valid active duty agreement could

exist in the absence of a coextensive enlistment agreement. The Government insists it cannot for not only are extensions of active service and extensions of enlistment separately addressed in the Navy's regulations but, more importantly, those regulations specifically require extensions of active duty to be "within the terms of their [naval reservists'] enlistment contract".[2] Thus, as the Government sees this case, plaintiff's active duty agreement was unauthorized by regulation for lack of an underlying enlistment agreement. It was, in other words, an impermissible exercise of administrative authority.

The problem with this argument is that, while agreements respecting enlistment and those respecting active service do, indeed, involve separate administrative determinations (and, in that sense, the exercise of separate powers) nevertheless, the authority for both determinations resides here in a single source, namely, the commanding officer. Keeping this in mind, what the Government's argument really comes down to then is not that plaintiff's active duty agreement must fail for want of authority on the part of the commanding officer but rather for his failure to have exercised his authority to the fullest.

And so viewed, the Government's position loses all persuasive force. It is an empty argument—one that stresses the incompleteness of a paper record while ignoring the fact that the commanding officer's decision to promote plaintiff and secure an extension of his active service necessarily subsumed the intention to secure his reenlistment as well. To see it any other way is to defeat what the commanding officer had both the purpose *and the power* to accomplish. In short, the exercise of administrative authority necessary to secure plaintiff's reenlistment was, for all practical purposes, manifested in the active duty

agreement. Nothing remains lacking now except the memorialization of that exercise.

Accordingly, Judge Colaianni's order directing the correction of plaintiff's records offended no boundaries of judicial or administrative authority. The order simply directed the Navy to correct its records to conform them to the actions that it had, in fact, accomplished.

B. *The Contract References.* The other difficulty which the Government sees in the opinion goes to the fact that Judge Colaianni supported his analysis of the issues by viewing the active duty extension agreement as a contract. To this the Government objects, saying that "[l]ike an enlistment agreement, the active duty agreement in this case is governed by the applicable regulations, not contract principles."

Again the Government's focus is too narrow. The fact that the military employment relationship is generally referred to as a statutory relationship does not mean that it is inappropriate to examine agreements entered into within the framework of that relationship in light of traditional contract principles. Rather, as the Court of Claims observed in *Grulke v. United States*, 228 Ct.Cl. 720, 723 (1981)—

> * * * modern case law * * * recognizes [that] both a change of status and contractual rights are involved in the transition from civilian to soldier. [Citations omitted.]

The court in that case went on to explain that, with the advent of the all-volunteer Army, a new recruitment philosophy was born that couched its inducements to enlist in such terms as "promise" and "guarantee". And such language, the court pointed out, bolstered the bargained-for aspects of the enlistment process and thus justified the application of contract concepts in

---

**2.** The reference is to the Naval Military Personnel Manual (MILPERSMAN), Article 1050200, entitled "Agreements of Enlisted Naval Reservists, Fleet Reservists, and Inductees to Remain on Active Duty", which provides:

1. Members of the Naval Reserve on active duty who desire to continue on active duty

beyond their expiration of active obligated service (EAOS) dates and who are qualified in all respects for reenlistment may be permitted to extend or reextend their active duty agreements subject to approval by their commanding officer, within the terms of their enlistment contract * * *.

framing appropriate solutions to situations where—as the court put it—"program guarantees are breached". *Id.* at 724.

In like manner Judge Colaianni's opinion views plaintiff's discharge as a transgression of regulation and simultaneously, a breach of the terms of the active duty agreement. The opinion is in accord with the views expressed in *Grulke, supra,* and is therefore correct as it stands.

The Government's motion is DENIED. IT IS SO ORDERED.