Timothy C. BECKERING, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 77–89 C.

United States Claims Court.

Nov. 15, 1990.

Timothy J. Farrell, O'Fallon, Mo., for plaintiff.

Lisa B. Donis, with whom were Asst. Director Thomas W. Petersen, Director David M. Cohen, and Asst. Atty. Gen. Stuart M. Gerson, Washington, D.C., for defendant. LT Ruth Thompson, Dept. of the Navy, Office of the Judge Advocate General, of counsel.

ORDER GRANTING DEFENDANT'S MO-
TION TO DISMISS FOR LACK OF
JURISDICTION AND DIRECTING
ENTRY OF JUDGMENT DISMISS-
ING THE COMPLAINT

WIESE, Judge.

Plaintiff, a former member of the United States Navy, is suing here to recover medical expenses resulting from an automobile accident that occurred within the 90–day period following his discharge from military service. Liability is asserted against the United States on the theory that the Navy failed to fulfill an alleged contractual responsibility, undertaken in conjunction with plaintiff's separation from service, to procure temporary civilian health insurance coverage for him. The case is before the court on defendant's motion to dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Argument on the motion was heard on November 8, 1990. At that time the court, having considered the written submissions of the parties together with their oral presentations, entered a bench ruling in defendant's favor granting the motion on jurisdictional grounds. This order formalizes that ruling.

I

On November 9, 1983, Timothy C. Beckering was honorably discharged from the Department of the Navy in Long Beach, California following several years of sea duty aboard the USS HOEL. On the day of his discharge, the ship's personnel officer, Chief Petty Officer Dino Conrado Quijano, explained to Beckering that he had the option to enroll in a short-term health insurance plan offering coverage for the 90–day period following separation from service. This explanation was required by NAVMILPERSCOM Instruction 1760.1A, a Department of Defense Directive now codified at 32 C.F.R. § 104.1–5 (1989). The Instruction requires commanding officers to inform all members who are being separated from active military service about the availability of short-term health care insurance. The Instruction also requires each separating service member, after being advised of the availability of temporary health insurance through a private carrier, to acknowledge, in writing, whether or not participation in the program is desired. If the service member chooses to purchase the temporary insurance coverage, he must complete an appropriate application form and pay the required premium ($25.00) either by check, money order or payroll deduction. The commanding officer then forwards the application and payment to the insurance carrier—in this instance—Mutual of Omaha.

Participation in the temporary health insurance plan by separating Navy personnel is strictly voluntary. The directions to commanding officers contained in the NAVMILPERSCOM Instruction serve to notify separating personnel that their health insurance coverage will lapse upon separation from the military and that temporary insurance is available. Under the NAVMILPERSCOM Instruction, however, the commanding officer cannot endorse or recommend the health insurance. In addition, the NAVMILPERSCOM Instruction advises that "[a]ll matters regarding coverage, conversion, and extension of benefits are strictly a private agreement between the participant and Mutual of Omaha."

At his discharge conference with Chief Quijano on November 9, 1983, plaintiff completed a personnel form indicating his wish to participate in the health insurance program. The form reads: "I do ... desire to enroll in health care insurance provided in NAVMILPERSCOMINST 1760.19 series." According to plaintiff's affidavit, after signing this document, he asked Chief Quijano whether payment of the premium

could be accomplished through a payroll deduction and was advised that it could be. Beckering also states in his affidavit that Chief Quijano advised him that there were no other forms to be signed. Finally, plaintiff's affidavit declares that "PNC Quijano never offered an insurance application to me, nor was I ever made aware by PNC Quijano, or anyone else, that a completed application was required."

In January 1984, Beckering was involved in a severe automobile accident. The medical bills arising from this accident totaled $22,551.27. After the accident, Beckering requested Mutual of Omaha, the provider of the temporary health care insurance coverage to enrolled former service members, to pay the medical costs attributable to his accident. After receiving his request, Mutual of Omaha informed Beckering on July 19, 1984 and again, on re-inquiry, on February 27, 1986, that it had received neither the application form nor the premium necessary for enrollment in the temporary health insurance plan. Therefore, Mutual of Omaha rejected Beckering's claim on the ground that no contract for insurance existed.

For purposes of this motion, the Government concedes that no insurance application was ever processed in plaintiff's behalf nor were payments for such insurance ever deducted from his pay. In this suit, Beckering seeks judgment for that amount which he would have received had a policy for short term health insurance been in force with Mutual of Omaha on the date of his accident.

## II

We do not have jurisdiction over this case. Under our general jurisdictional statute, 28 U.S.C. § 1491 (1988), only those injuries are redressable here for which monetary compensation has been authorized. "We may not give any relief unless the 'plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; .... [or he alleges] that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to

be paid a certain sum.' " *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975) (citing *Eastport S.S. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967)).

Plaintiff attempts to bring himself within the scope of this rule by arguing that his claim is based on the Government's failure to discharge a contractual responsibility to procure insurance for him. Therefore, argues plaintiff, as an alternative to contract performance he has a right to contract damages, *i.e.*, a right to monetary relief measured by the value of the Government's unfulfilled promise.

We cannot accept this argument because no contract right exists here. The benefits owing to a military service member are governed by statutes and regulations, and not by general principles of contract law. *United States v. Larionoff*, 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977); *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). Therefore, when the Government acts to secure entitlements for a service member, it is functioning in an administrative capacity discharging duties imposed by law. The information provided to plaintiff about the availability of interim insurance coverage was information he had a right to receive under federal regulation. There was, however, no Government "offer" involved in the communication of that information to him.

Since the Government's duties are imposed by law, and not by contract, injury resulting from the incomplete or insufficient performance of those duties, if redressable at all, is actionable only as a tort—a species of suit over which this court has no jurisdiction. See *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1576 (Fed.Cir.1984) ("negligent performance of a noncontractual duty cannot be the basis of a breach of contract claim. Rather, the negligent disclosure of information by the government, when the government had no *contractual* duty to supply such information may sound in tort") (emphasis in original); *Shaw v. United States*, 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981) ("[f]ederal officials who

by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee as they might if the employer were not the Government").

It is true—as plaintiff pointed out during oral argument—that the court has, on occasion, enlisted the aid of contract law in deciding questions of entitlement arising under military enlistment agreements. In particular, reference was made to the decision on reconsideration in *Alley v. United States*, 6 Cl.Ct. 99 (1984) where the court declined to amend language of its earlier opinion (appearing at 5 Cl.Ct. 280 (1984)) which described an agreement providing for a service member's extension of active duty as a "contract binding on both parties." The opinion on reconsideration said:

> The fact that the military employment relationship is generally referred to as a statutory relationship does not mean that it is inappropriate to examine agreements entered into within the framework of that relationship in light of traditional contract principles. Rather, as the Court of Claims observed in *Grulke v. United States*, 228 Ct.Cl. 720, 723 (1981)
>
> * * * modern case law * * * recognizes [that] both a change of status and contractual rights are involved in the transition from civilian to soldier. [Citations omitted.] 6 Cl.Ct. at 101.

Plaintiff relies on the quoted language to support its invocation of contract doctrine here. However, that reliance is misplaced. The decision in *Alley* enlisted contract law simply as an aid in the interpretation of an agreement implementing statutory provisions; it should not be read as recognizing a basis for monetary liability independent of any statutory promise of payment. In other words, the contract in *Alley* was simply a mechanism used to accomplish statutory goals rather than a bilateral undertaking in the usual sense.

### III

Aside from plaintiff's claimed contract right, no other basis for monetary relief has been shown to exist. The suit must be dismissed for lack of jurisdiction. The Clerk shall enter judgment accordingly. No costs.