**Dennis Wayne BRUCE, Plaintiff,**

v.

**UNITED STATES ARMY: and United States of America, Defendants.**

Civ. A. No. 80–73059.

United States District Court,
E. D. Michigan, S. D.

Feb. 26, 1981.

J. Martin Brennan, Sterling Heights, Mich., for plaintiff.

David L. Maurer, Asst. U. S. Atty., Detroit, Mich., for defendant United States of America.

Major Michael J. Nardotti, Jr., Military Personnel Branch, Litigation Division, Office of the Judge Advocate Gen., Washington, D. C., for defendant United States Army.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

The plaintiff herein has filed an action seeking damages for the defendants' alleged breach of an enlistment agreement. Presently before the Court is a motion by the defendants seeking alternatively summary judgment or dismissal of the complaint. FR Civ P 12 and 56. The defendants assert in their motion that the complaint fails to state a claim upon which relief may be granted, and that this Court lacks jurisdiction of the subject matter.

Defendants have submitted, in support of their motion, a fairly extensive statement of facts, supported by certified copies of the plaintiff's official military personnel file and the Army regulations in force at the pertinent times. Plaintiff has not taken issue with this statement, and therefore, for purposes of this motion, the Court will take these facts as established insofar as they do not contradict the factual allegations of the complaint. A brief summary of these facts will suffice to convey an overview of this case.

Plaintiff Bruce applied for enlistment in the United States Army in December of 1978. In connection with his enlistment, plaintiff elected the Training of Choice Enlistment Option provided by Army Regulation (AR) 601–201. Pursuant to this election, plaintiff was allowed to specify the Military Occupational Specialty for which he would be trained. Plaintiff selected training as a "Clinical Specialist 91C10.2." In February of 1979 plaintiff entered active duty, and after six weeks of basic training, began receiving specialized training in medical care. Plaintiff received sufficient training to qualify for the military occupational specialties of "Medical Specialist 91B 00" and "Patient Care Specialist 91C 10." Apparently, however, there was some confusion on the part of the Army, for it did not, as it now admits, provide the plaintiff with the full measure of training he expected to receive. In fact, the Army determined that because plaintiff did not meet the longevity and promotion eligibility requirements to qualify as a "careerist," he was not eligible to receive the so-called "long course" training which he desired. In February of 1980, plaintiff protested to his commanding officer that receiving the

"long course" training was an essential part of what he understood his Training of Choice Enlistment Option to mean, and that if he could not be given the "long course" training, he was entitled to discharge for erroneous enlistment under Chapter 5 of Army Regulation (AR) 635–200. The Army upon review of his case, granted plaintiff an Honorable Discharge in April of 1980.

## I.

■ The defendants submit that, as a matter of law, damages cannot be awarded for breach of an enlistment agreement. The reason for this, it is stated, is because an enlistment agreement, although analogous in many respects to an ordinary contract, is nonetheless fundamentally unique.

The uniqueness of the enlistment agreement, as a distinct species of contract, has been recognized by courts as early as the case of *United States v. Blakeney*, 44 Va. (3 Gratt) 405 (1847), where it was observed that the enlistment contract "is a contract of a peculiar nature (and) in its principles and consequences, is certainly widely different from the ordinary civil compacts between individuals." *Id.* at 409.

This difference was recognized and further defined by the Supreme Court of the United States in the case *In Re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). The essential distinguishing feature of the enlistment agreement, according to *Grimley*, is that it effectuates a change in the enlistee's status, in a manner similar to marriage or naturalization. The Court in *Grimley* reasoned from this that mere breach of the enlistment agreement, would not *ipso facto* require the change of status to be revoked.

Although the "peculiar nature" of enlistment agreements has been widely observed and remarked upon by the courts and the commentators, nonetheless no clear consensus has emerged as to exactly what effect this "peculiar nature" has upon the applicability of traditional common-law principles of contract law. It appears to be well settled now, for instance, that in suits by enlistees for pay, the applicable federal statutes and regulations are to be regarded as having displaced entirely common-law contract principles. *United States v. Larionoff*, 431 U.S. 864, 869, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). Further, when confronted with a suit by the Secretary of the Air Force to recover the cost of the Air Force Academy educations provided to individuals who obtained conscientious-objector discharges prior to fulfilling their active duty commitments, another court held that, although there was no provision made by statute or regulation for such a suit, nonetheless the issue presented was "essentially a question of fiscal policy far too involved for simple contract principles to settle," and "a matter best left to the political processes of Congress." *McCullough v. Seamans*, 348 F.Supp. 511, 513 (E.D.Cal., 1972).

On the other hand, several courts have found no obstacle at all to the application of contract law principles to the issue of whether an enlistment contract is valid and enforceable, where enlistees have sought discharge by writ of habeas corpus. *See e. g., Pence v. Brown*, 627 F.2d 872, 874 (CA 8, 1980); *Peavy v. Warner*, 493 F.2d 748, 750 (CA 5, 1974); *Johnson v. Chafee*, 469 F.2d 1216 (CA 9, 1973), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973); *United States ex rel. Roman v. Schlesinger*, 404 F.Supp. 77, 85 (E.D.N.Y., 1975). This Court would therefore reject, at the outset, the contention that it lacks subject matter jurisdiction over questions of enforcement and interpretation of enlistment agreements. *Lundgrin v. Claytor*, 619 F.2d 61, 62 (CA 10, 1980).

However, on the issue of whether breach of an enlistment agreement will support a claim for money damages, the Court's research has failed to uncover any precedent. There have been cases where courts have considered claims for money damages arising from alleged breaches of enlistment agreements, but in each case the court has found no breach. *Jackson v. United States*, 573 F.2d 1189 (Ct.Cl.1978); *Reamer v. United States*, 532 F.2d 349 (CA 4, 1976); *Ad-*

*ams v. Clifford*, 294 F.Supp. 1318 (D.Hawaii, 1969). At least one commentator has observed, in discussing the range of potential judicial remedies for breach of enlistment agreements, that: "The damages remedy would probably involve insuperable problems of valuation." Comment, *Armed Forces Enlistment: The Use and Abuse of Contract*, 39 U.Chi.L.Rev. 783, 808 (1971–72). Aside from valuation problems, an award of monetary damages in this situation would seem to implicate federal fiscal policy questions similar to those which the court in *McCullough, supra*, found to be better left to the legislative process.

In the instant case, however, this Court is not called upon to make a broad ruling as to the availability of monetary damages for enlistment agreement breaches, in general. The foregoing problems relating to this issue generally, are cited only as they bear upon the Court's reading of this particular enlistment agreement. Annex "C" of the plaintiff's enlistment agreement contains the heading "Statements for Enlistment Part IV—United States Army Training of Choice Enlistment Option." It is this page that contains the assurance that the plaintiff would be provided military occupational specialty training as a Clinical Specialist 91C10.2, provided certain enumerated conditions were met. Paragraph 2, on the second page thereof, states:

> UNDERSTANDING: I have read and understand each of the statements above and in DD Form 1966, signed by me and understand that these statements are intended to constitute all promises whatsoever concerning my enlistment. Any other promise or representation of commitment made to me in connection with my enlistment is written below in my own handwriting, or is hereby waived. (If none, write "None.")

The word "none" is written immediately below paragraph 2, and the plaintiff's signature appears immediately below that. Disclaimers of collateral promises, substantially identical to that of paragraph 2, appear over plaintiff's signature or initials on pages 1 and 3 of the enlistment document (DD forms 4/1 and 4/3), also.

■ The Court finds that pages 1 through 14 of the certified copy of plaintiff's official military personnel file, and the pertinent statutes and regulations in force at the time of enlistment, constitute the entire enlistment agreement between plaintiff and defendant, and the sole basis for any contractual claim by the plaintiff arising out of his enlistment. *Jackson v. United States*, 573 F.2d 1189 (Ct.Cl.1978); *Dubeau v. Commanding Officer*, 440 F.Supp. 747, 749 (D.Mass., 1977).

■ Subparagraph (i) under paragraph 1, on the first page of Annex "C" of the enlistment contract, reads as follows:

> 1. In the event my enlistment commitment cannot be fulfilled, the alternatives available to me will be as provided in Chapter 5, AR 635–200, as of the date my claim of unfulfilled enlistment commitment or erroneous enlistment is submitted. I understand that I will have a period of thirty (30) days to elect an alternative or to request other training from the date I am advised that my selected option cannot be fulfilled, or where not formally advised, from the date I discover or should have discovered, the grounds for submitting a claim. This period may be extended by the general courts-martial convening authority when necessary to determine the availability of my selected alternative. If I make no election within that period, my claim will be deemed to have been waived. I may withdraw any request for training or reassignment prior to approval and elect another alternative, but not thereafter.

It appears from the certified copy of the plaintiff's official military personnel file that the plaintiff availed himself of the alternatives provided in Chapter 5 of AR 635–200 by requesting discharge on the grounds of erroneous enlistment in February of 1980. In April of 1980, the plaintiff's request for discharge was granted.

The Court finds, giving due consideration to both the substance of the enlistment agreement in question and the governmental policy concerns underlying enlistment

agreements generally, that the alternatives provided by Chapter 5 of AR 635–200 should be construed as constituting the exclusive remedies available for erroneous enlistment, or inability of the Army to fulfill the enlistee's enlistment commitment. Therefore no action for breach of contract may be maintained on these facts.

## II.

 Apart from his breach of contract claim, the plaintiff herein asserts a claim sounding in tortious misrepresentation. The defendants' motion argues that this claim is barred by the doctrine of sovereign immunity. The Court agrees with this view.

"It is elementary that '(t)he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit.' *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607, 613 (1980).

Further,

"Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions . . . to such waiver." *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976).

Any waiver of the sovereign immunity of the United States from claims sounding in tort must be found in the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, and claims based upon tortious misrepresentation are expressly excepted from the terms of the waiver provided therein. 28 U.S.C. §§ 2679(a) and 2680(h). *Bor-Son Building Corp. v. Heller*, 572 F.2d 174, 177 (CA 8, 1978); *Fitch v. United States*, 513 F.2d 1013, 1015 (CA 6, 1975), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975).

## III.

Therefore, upon the facts regarded as established for purposes of this summary judgment motion, the Court FINDS that the defendants are entitled to judgment as a matter of law on the plaintiff's contract claim. Further, as regards plaintiff's claim for tortious misrepresentation, the Court finds that plaintiff's claim for tortious misrepresentation must be DISMISSED for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.