Ronald **BEAUCHAMP** and Judith C. **Beauchamp**, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 91–83C.

United States Claims Court.

Oct. 5, 1984.

Linda Diane Campbell, San Jose, Cal., for plaintiffs.

Jane W. Vanneman, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This case comes before the court on defendant's motion for summary judgment, plaintiffs' opposition thereto, and defendant's reply.[1] The plaintiffs frame their cause of action as a breach of contract, alleging that a written employment (re-enlistment) contract between the U.S. Air Force and Mr. Beauchamp was breached which resulted in $1,000,000 in damages. The plaintiffs allege that an agent of the defendant, acting within the scope of his authority, breached the covenant of good faith and fair dealing by providing false and misleading information regarding the availability of mobile home space in California. The gravamen of their claim is that the misinformation was given pursuant to

---

1. Pursuant to a stipulation by the parties, this case was transferred from the United States District Court, Northern District of California, 28 U.S.C. §§ 1406, 1631, to the United States Claims Court, to avoid a dismissal of alleged contract claims, exclusively in the jurisdiction of this court, that were embodied in a complaint otherwise barred by the *Feres* doctrine under the Federal Torts Claims Act, 28 U.S.C. § 1346.

a contractual obligation, to provide helpful data, imposed by Air Force Regulation 35–35 that was incorporated by reference into Mr. Beauchamp's re-enlistment agreement with the U.S. Air Force.

While not stated therein, the plaintiffs' complaint purports to premise jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491.

In its motion for summary judgment, the defendant, raises two issues: (1) whether the Claims Court has jurisdiction over the plaintiffs' claim where the complaint is framed in contract but sounds in tort; and (2) whether as a contract action the plaintiffs have stated a claim upon which relief may be granted.

For reasons hereinafter delineated, the court concludes that it has jurisdiction under the Tucker Act because the plaintiffs' claim arises primarily out of an express contract. Nonetheless, the case must be dismissed for failure to state a cause of action because the regulation embodied in the contract from which the alleged tortious conduct arose, does not mandate money damages.

### FACTS [2]

■ On March 9, 1978, Mr. Beauchamp signed an agreement to re-enlist in the U.S. Air Force for a period of four years. Under the section headed "Benefits", the agreement read:

11. I will *receive* the pay and allowances and *other benefits as provided by* law and *regulation.*

12. With regard to *any other benefits*, I understand that only those promises, if any, recorded herein or on Annex(es) attached hereto will be honored and that any other promises not contained therein made by any person are not effective and

will not be honored. (Emphasis added.)

Next to the word Annex(es), "NA" was typed in.

Under the next section headed "Understandings", the agreement read in pertinent part:

16. ... I understand that ONLY those promises concerning assignment to duty, geographical area, ... Government quarters ... bonuses or other compensation; promotions; or transportation of and support to dependents contained herein or recorded on the Annex(es) attached hereto, if any, will be honored and that any other promises not contained therein made by any person are not effective and will not be honored....

No annexes were attached to the agreement.

At all times since the execution of the 1978 re-enlistment agreement, Air Force Regulation 35–35, Individualized Newcomer Treatment and Orientation Program (INTRO) was in effect. Chapter 1 of the regulation states its policy:

"Air Force members being reassigned require timely information about their new location. They are entitled to maximum assistance, within available resources, to minimize the problems which accompany relocation...." AFR 35–35(1–1).

One phase of the INTRO program was sponsorship. "Through sponsors, newcomers receive highly individualized information about their new unit and geographic area." AFR 35–35(1–2)(a).

"The Sponsor Program is designed to:

a. Minimize the hardships associated with personnel movements.

---

**2.** In support of its summary judgment motion, the defendant submitted a three-volume administrative record. Although not in one of the forms specified by RUSCC 56(c), the court may consider all the evidence submitted because the plaintiffs did not raise any objections to its submission in their opposition. *Chevron Chem-*

*ical Corp. v. United States,* 5 Cl.Ct. 807 at 810–811 n. 1 (1984); *Julian v. Raytheon Co.,* 557 F.Supp. 1058, 1063 (D.Del.1983); *Rather v. Young,* 465 F.Supp. 386, 390 (D. St. Croix, Virgin Islands 1979); *Munoz v. International Alliance of Thea. Stage Emp.,* 563 F.2d 205, 214 (5th Cir.1977).

b. Provide effective individualized assistance to incoming members.

c. Demonstrate to all new members and their families that they are welcome additions to the installation and the unit." AFR 35–35(2–1).

Sponsor responsibilities were stated as follows: "Accomplish all actions on the RIP [Report Individual Person], to include a personal welcome letter to the new member. *Recommended* content of the welcome letter is in attachment 2." (Emphasis added.) AFR 35–35(2–7). Attachment 2 is a checklist for the sponsor welcome letter. This checklist states in pertinent part:

1. Contact the individual you are sponsoring by letter conveying warmth and sincerity and expressing ideas and recommendations concerning the member's pending arrival. Put yourself in the newcomer's place and provide information you would need. The letter and associated material should include, but is not limited to:

```
    *      *      *      *      *      *
```

e. Housing:

(1) Find out from the newcomer what his or her military family housing or single housing requirements are....

(2) General information on housing in the local community (if applicable).

AFR 35–35(A–2).

On or about March, 1981, Mr. Beauchamp received an order to transfer to the Air Force Satellite Control Facility in Sunnyvale, California. MSgt. Greenlee was appointed as a sponsor to Mr. Beauchamp. The plaintiffs contend that MSgt. Greenlee failed to provide them with correct information regarding the availability of sites for the placement of mobile housing in California associated with their specific needs, pursuant to his sponsorship duties imposed by AFR 35–35. The plaintiffs allege that damages of $1,000,000 were suffered by them as a result of their reliance on this misinformation, which induced them to move their mobile home to California where they learned, thereafter, that it was not suited for that area of California.

## DISCUSSION

The defendant first contends in its motion for summary judgment that this court lacks jurisdiction because the plaintiffs' complaint, though framed in contract, sounds in tort. The plaintiffs counter that their claim is well founded on a tortious breach of contract, and thus within the jurisdiction of the Tucker Act.

■ Our analysis begins with the recognition that "where an alleged 'negligent' act constitutes a breach of a contractually created duty, the Tucker Act does not preclude relief. '[A]n action may be maintained in this court which arises primarily from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.' [Citations omitted]." *Bird & Sons, Inc. v. United States*, 190 Ct.Cl. 426, 431, 420 F.2d 1051, 1054 (1970). Thus, "[i]nsofar as plaintiff[s'] references to defendant's alleged misrepresentations are merely another way of asserting that a breach of contract has occurred, the ... claim is not barred simply because it might also be stated as a tort." *Olin Jones Sand Co. v. United States*, 225 Ct.Cl. 741, 745 (1980). However, in order for jurisdiction to lie here, the plaintiffs must be able to show a definite connection between the alleged tortious conduct and a contractual obligation owed to them by the Air Force. Therefore, it is not sufficient to argue, in attempting to establish jurisdiction, that the alleged tortious conduct is related in some general sense to the contractual relationship between the parties. *L'Enfant Plaza Properties, Inc. v. United States*, 227 Ct.Cl. 1, 11, 645 F.2d 886, 892 (1981).

■ The definitive jurisdictional issue, therefore, is whether the alleged tortious conduct emanates from attempted compliance with bona fide contractual obligation(s) exercised by an authorized Air Force agent. Neither party disputes the fact that in 1978 a re-enlistment agreement was signed by Mr. Beauchamp and an authoriz-

ed Air Force agent. This re-enlistment agreement, together with all applicable statutes and Air Force regulations in force, constituted Mr. Beauchamp's re-enlistment contract. *Jackson v. United States*, 216 Ct.Cl. 25, 41, 573 F.2d 1189, 1197 (1978); *Bruce v. United States Army*, 508 F.Supp. 962, 965 (E.D.Mich.1981). Since the Claims Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491,[3] over an express contract, which includes an enlistment agreement, *a fortiori* it has jurisdiction over a re-enlistment contract as obtains in the instant case notwithstanding an alleged tortious breach. *DeCrane & Radish v. United States*, 231 Ct.Cl. 951, 953 (1982); *Hanna v. United States*, No. 256–84C, slip op. at 2 (Cl.Ct. unpub. August 24, 1984). The tortious conduct alleged by plaintiffs consisted of the sponsor, in seeking to comply with contract provisions (AFR 35–35), providing false and misleading information regarding mobile home space in California. These alleged acts clearly establish a definite connection between the alleged tortious conduct and the contractual obligation(s) owed to Mr. Beauchamp by defendant. Against this background, we conclude that since plaintiffs' claim is validly based on an express re-enlistment contract entitling Mr. Beauchamp to "benefits as provided by regulation," which allegedly was tortiously breached by defendant's related conduct, this court has jurisdiction to hear the plaintiffs' claim.

Turning to the second issue, the defendant argues, assuming this court finds jurisdiction in the first instance, that the plaintiffs have nevertheless failed to state a claim upon which relief may be granted because the re-enlistment agreement did not contain any promises or representations regarding suitable mobile home space in California. More importantly, defendant urges that damages cannot be recovered for breach of an enlistment contract.

Plaintiffs respond to the foregoing by contending that it is a question of intent "whether the military intended AFR 35–35 to become part of the enlistment agreement through the phrase 'other benefits as provided by law and regulation' [which factual issue is inappropriate for summary judgment]." Parenthetically, the court notes that the plaintiffs do not specifically address the legal question whether damages can be recovered for a breach of a *re-enlistment* contract. Instead, they simply maintain that both traditional and modern contract principles apply to military enlistment contracts.

The court observes, at the outset, that:

The standard to be applied by the court in passing on defendant's motion for summary judgment begins with the principle that the motion must be denied if any genuine issue as to a material fact exists.... In determining the existence of genuine issues as to material facts, the court considers all facts in the light most favorable to the nonmoving party (citations omitted), and must resolve doubts against the movant. *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

In response to a motion for summary judgment, however, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Citations omitted.)

*Lehner v. United States*, 1 Cl.Ct. 408, 412–13 (1983). Against this yardstick, the court concludes that defendant's summary judgment motion is appropriate here because even assuming favorably, as we must, in behalf of the plaintiffs that AFR 35–35 was

---

**3.** The Tucker Act, 28 U.S.C. § 1491, provides, *inter alia:*

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

intended to be a part of Mr. Beauchamp's re-enlistment contract, the court holds, *infra*, that defendant is entitled to judgment as a matter of law because of plaintiffs' failure to state a claim upon which relief may be granted in this court.

■ As a threshold matter, the court is compelled to emphasize that:

In determining a plaintiff's entitlement to relief, one must start with the proposition that this is a court of very limited jurisdiction. Because all claims brought are against the United States and therefore involve a waiver of sovereign immunity, *Porter v. United States*, 204 Ct.Cl. 355, 359 [496 F.2d 583] (1974); *National State Bank of Newark v. United States*, 174 Ct.Cl. 872, 876, 357 F.2d 704 (1966), the court must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization (citations omitted), but an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed....

*Connolly v. United States*, 1 Cl.Ct. 312, 314 (1982), *modified*, 716 F.2d 882, *cert. denied*, —— U.S. ——, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ *United States v. Mitchell* teaches us that:

The existence of a waiver is readily apparent in claims founded upon "any express or implied contract with the United States." 28 U.S.C. § 1491. The Court of Claims' jurisdiction over contract claims against the government has long been recognized, and government liability in contract is viewed as perhaps "the widest and most unequivocal waiver of federal immunity from suit." * * * ... If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit. * * *

It nonetheless remains true that the Tucker Act "does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S., [535] at 538, 100 S.Ct., [1349] at 1351 [63 L.Ed.2d 607], quoting *United States v. Testan*, 424

U.S., [392] at 398, 96 S.Ct., [948] at 953 [47 L.Ed.2d 114]. A substantive right must be found in some other source of law, such as "the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1491. Not every claim invoking ... a[n] [executive] regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, [citations omitted], and *the claimant must demonstrate* that the source of substantive law he relies upon " 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.' " (Emphasis added.)

*United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983).

Our focus now is whether said contract, particularly AFR 35–35 upon which plaintiffs rely, constitutes a waiver of sovereign immunity sufficient to create a substantive right enforceable against the United States for money damages. Although we have stated, *supra*, that here plaintiffs' claim is founded under the Tucker Act on a re-enlistment contract, this contract is one of "a peculiar nature (and) in its principles and consequences, is certainly widely different from the ordinary compacts between individuals." *Bruce v. United States Army*, 508 F.Supp. 962, 964 (E.D.Mich.1981), citing *United States v. Blakeney*, 44 Va. (3 Gratt) 405, 409 (1847). Given the "peculiar nature" of enlistment agreements, no clear consensus has emerged as to exactly what effect this "peculiar nature" has upon the applicability of traditional commonlaw principles of contract law. *Id.* at 964.

On the issue of whether breach of an enlistment agreement will support a claim for money damages, there appears to be no precedent. *Bruce* at 964. There have been cases, however, where courts have considered claims for money damages arising from alleged breaches of enlistment agreements, but in each case the court has found no breach. *Id. Grulke v. United States*, 228 Ct.Cl. 720, 725 (1981); *Jackson*

*v. United States*, 216 Ct.Cl. 25, 43, 573 F.2d 1189, 1198 (1978). In fact, our predecessor court stated in *Jackson*, 216 Ct.Cl. at 43, 573 F.2d at 1198, that "... no case has been cited to us and we have found none where a soldier has been awarded money damages ... received during military service on the theory that there had been a breach of his enlistment contract." This court observes likewise. Conceptually, this absence may be explained by *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961), where the Supreme Court stated that:

> ... it is to be observed that commonlaw rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent upon statutory right....

To the same accord, the Ninth Circuit in *Jablon v. United States*, 657 F.2d 1064, 1066 (9th Cir.1981), held that:

> We ... have concluded that *money damages* are *not* an available remedy for the government's breach of an enlistment contract. *Larionoff* and *Bell* reflect the Supreme Court's determination that Congress did not intend for the United States to be liable for *money awards* to soldiers unless Congress specifically so provided. A soldier is not paid on contract principles ... Instead, authorization for money paid to soldiers must come directly from Congress or its duly authorized agency .... (Emphasis added.)

See also *United States v. Larionoff*, 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977); *Schuhl v. United States*, 3 Cl.Ct. 207, 212 (1983); *Kania v. United States*, 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268 (1981).

In the case at bar, there were no promises contained in the re-enlistment agreement specifically embracing the contractual benefits to which the plaintiffs claim. The only relevant obligations imposed on the Air Force were "pay and allowances and

*other benefits as provided by law and regulation.*" (Emphasis added.)[4] All of such obligations, including AFR 35–35, would have been imposed on the Air Force even if no re-enlistment agreement had been signed, upon the relocation of the plaintiffs, because the rights of service members are determined by reference to statutes and regulations. *Id.* Thus, it necessarily follows therefrom that before plaintiffs can be found to have stated a substantive claim upon which relief can be granted, this court must examine AFR 35–35 to determine whether said regulation can fairly be interpreted as mandating damages. This is required because the gravamen of the plaintiffs' complaint, although founded on contract, stems from the alleged negligent conduct of a government agent performing sponsorship duties under that regulation.

■ Consequently, the plaintiffs' burden, here, is to show that the regulation, AFR 35–35, can be read to fairly mandate this court to award damages for the Air Force's alleged negligence in complying with the regulation. The plaintiffs have not so shown; in fact, there is a total failure of proof in this regard. More significantly, the court could not find any statutory or regulatory provision or legislative history concerning the INTRO Program, AFR 35–35, that expressly or by implication mandates that damages may be awarded if sponsorship duties were not performed or were performed negligently. *See Holmes v. United States*, 3 Cl.Ct. 521, 523 (1983); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 606–608, 372 F.2d 1002, 1008–09 (1967). To the contrary, the evidence indicates quite clearly that, rather than mandating damages for denying the benefit, it appears that the sponsor's responsibilities as to scope and methodology of housing assistance were recommended and not mandated. See AFR 35–35(2–7), (A–2). We conclude from the foregoing discussion that because money

---

**4.** Regulations of an Executive Department have the force and effect of law. *Jackson v. United States*, 216 Ct.Cl. at 36, 573 F.2d at 1194.

damages could not be deemed to be fairly mandated by the regulation, plaintiffs fail to state a claim upon which relief may be granted. In addition, we also embrace the observation in *United States v. Testan*, 424 U.S. at 401, 96 S.Ct. at 954, that the argument is unsound—that "all substantial rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation."

It is true, as the plaintiffs contend in their opposition memorandum, that there is strong case law holding that traditional and modern contract principles apply to enlistment contracts. However, in the cases cited to the court, the complainants were seeking habeas corpus relief, not damages. *Novak v. Rumsfeld*, 423 F.Supp. 971 (N.D. Cal.1976); *Dubeau v. Commanding Officer, Naval Reserve Center, Boston, Mass.*, 440 F.Supp. 747 (D.Mass.1977); *Jones v. Watkins*, 422 F.Supp. 1268 (N.D.Ga.1976). Where enlistees have sought discharge by writ of habeas corpus relief, it is true that courts have found no obstacle to applying contract law principles. *Bruce*, 508 F.Supp. at 964; *Jablon*, 657 F.2d at 1066. But in a suit for damages for breach of an enlistment contract, as obtains here, this court will not grant relief unless the statute or regulation from which the claim stems mandates damages, *Jablon*, 657 F.2d at 1066, or there is a specific bargained-for promise or guarantee listed in the enlistment agreement for which it "is necessary that some remedy be afforded when [such] special program guarantees are breached ..." *Grulke v. United States*, 228 Ct.Cl. 720, 724 (1981).

## CONCLUSION

Mr. Beauchamp's re-enlistment agreement, together with the applicable statutes and regulations, constituted his re-enlistment contract. While this court has Tucker Act jurisdiction over the plaintiffs' claim because the alleged negligent conduct primarily arose out of that contract, nonetheless, defendant's motion for summary judgment, for failure of plaintiffs to state a claim upon which relief may be granted, is allowed because the court finds that plaintiffs' claim is bottomed on AFR 35–35 which, as a matter of law, does not mandate money damages. The Clerk shall therefore dismiss the petition.

IT IS SO ORDERED.