**Raymond H. TAYLOR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–640C.**

United States Claims Court.

Jan. 23, 1991.

Jay L. Nye, El Paso, Tex., for plaintiff.

Donald E. Kinner, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, and Asst. Director James M. Kinsella, for defendant. Lieutenant George F. Reilly, JAGC, USNR, Dept. of the Navy, of counsel.

## OPINION

LYDON, Senior Judge:

This case comes before the court on defendant's motion for summary judgment, to which plaintiff has not responded. Plaintiff's complaint challenges his administrative discharge from the Navy on breach of contract grounds. For the following reasons, the court grants defendant's motion for summary judgment.

## FACTS

The following facts are uncontroverted. On November 29, 1984, plaintiff Raymond H. Taylor (Taylor) enlisted in the United States Navy under a delayed entry program. On that date, both plaintiff and a Navy official signed an enlistment agreement, which provided, in part, that as a member of the Armed Forces, plaintiff would be "[e]ntitled to receive pay, allowances, and other benefits as provided by law and regulation."

Plaintiff's course of induction began in August of 1984, at the Military Entrance Processing Station (MEPS) in El Paso, Texas. Before plaintiff signed the enlistment agreement, he was required to obtain a medical waiver due to his history of elevated intraocular pressure (IOP) in both eyes. Elevated IOP can indicate glaucoma, which is a basis for rejection for enlistment in the Navy.[1] Plaintiff secured a medical evaluation from his civilian ophthalmologist, Dr. Schechter, who diagnosed plaintiff's condition as "slight high intraocular pressure (IOP), both eyes." Dr. Schechter stated that plaintiff is "able to perform in any rigorous training, including physical exertion and periods of stress."

Based on this evaluation, plaintiff's recruiters requested that the Commander of the Navy Recruiting Command grant plaintiff a medical waiver. In accordance with standard procedures, the Commander reviewed plaintiff's medical information and determined that plaintiff met "the estab-

---

1. *Dorland's Medical Dictionary* defines "glaucoma" as "a group of eye diseases characterized by an increase in intraocular pressure which causes pathological changes in the optic disk and typical defects in the field of vision."

lished physical standards" for enlistment. On November 28, 1984, the Commander approved plaintiff's medical waiver "for reason of history of elevated IOP."

On January 14, 1985, plaintiff reported for active duty at the Navy's Recruit Training Command in Great Lakes, Illinois. On January 16, 1985, while undergoing his initial physical examination during recruit processing, a problem with plaintiff's intraocular pressure was noted. Plaintiff was referred to a Navy ophthalmologist, Dr. Shantinath, who determined "beyond doubt" that plaintiff had glaucoma, and that this condition rendered him "not qualified for enlistment." Dr. Shantinath recommended that plaintiff be given a medical discharge. Subsequently, plaintiff was referred to a three-member medical screening board which evaluated his fitness for continued service in the Navy. The Medical Board evaluated plaintiff's entire medical record, including his physical examination during recruit processing, Dr. Schecter's report, and Dr. Shantinath's report. The Board noted that plaintiff had obtained a medical waiver in order to enlist, and concluded that:

> Since glaucoma is an insidious condition, quite subject to misdiagnosis in its early stages, MEPS personnel acted appropriately in accepting the written opinion of SR TAYLOR'S civilian ophthalmologist who had stated: "slightly high intraocular pressure, both eyes. No vision loss. The patient is able to perform rigorous training including physical exertion and stress."

The Medical Board determined that plaintiff did not meet the minimum physical standards of enlistment or induction because of glaucoma. On January 28, 1985, the Medical Board informed plaintiff of their findings and recommendations.

Plaintiff did not submit a rebuttal statement. Plaintiff was also notified, on that date, of administrative separation processing because of "defective enlistment and induction due to erroneous enlistment as evidenced by chronic open angle glaucoma, both eyes" that existed prior to his enlistment.[2] Plaintiff was advised that, if his separation was approved by the Commanding Officer at the Recruit Training Command, he would receive an Entry Level discharge.[3] Plaintiff was advised of his rights and privileges in connection with this notification procedure, and he chose to waive all rights and privileges, except his right to obtain the documents supporting the basis for his separation. Among the rights plaintiff gave up were his right to discuss his separation with a military attorney, and his right to have two working days in which to respond to the notice of separation processing. Furthermore, plaintiff stated on his "Statement of Awareness and Request For, or Waiver of, Privileges," dated January 28, 1985, that he did not object to this discharge. Plaintiff received an Entry Level Separation on February 6, 1985.

Plaintiff first challenged his discharge by filing an administrative claim under the Federal Tort Claims Act, which was denied on July 17, 1987 by the Acting Commanding Officer of the Naval Legal Service Office in Great Lakes, Illinois. The denial of plaintiff's claim was based on the determination that no "negligent or wrongful act was committed by any employee of the government" in connection with plaintiff's enlistment and subsequent discharge.

Plaintiff filed suit in this court on July 13, 1990, alleging breach of his enlistment contract, and seeking damages in the amount of $13,529.36.

---

2. The Naval Military Personnel Manual defines an "erroneous enlistment" in section 3620280, which states, in pertinent part:
   a. An enlistment ... is erroneous in the following circumstances:
   (1) It would not have occurred if the relevant facts had been known by the Navy Department ...;
   (2) It was not the result of fraudulent conduct on the part of the member; and

(3) The defects are unchanged in any material respect.

3. According to the Naval Military Personnel Manual, "[a]n Entry Level discharge is an uncharacterized discharge due to the short duration of service. A service member is in an entry level status for the first 180 days of active duty."

On October 13, 1990, defendant filed a motion for summary judgment on the merits of plaintiff's breach of contract claim. Defendant avers that it is entitled to summary judgment as a matter of law because it breached no contract with plaintiff. Defendant further argues that the administrative decision to discharge plaintiff should be upheld as it is neither arbitrary, capricious, nor contrary to law. Plaintiff has not yet responded to this motion, and his time for doing so, under the rules of the court, has now expired.

### A. Failure to Prosecute

When a plaintiff ignores or fails to meet a deadline imposed by court rules, the court may dismiss his complaint, on its own motion, for failure to prosecute, as provided in RUSCC 41(b). RUSCC 41(b) states, in pertinent part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim." *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962) (upholding court's power to invoke, *sua sponte*, the sanction of dismissal for failure to prosecute); *Claude E. Atkins Enters., Inc. v. United States*, 899 F.2d 1180, 1185 (Fed. Cir.1990); *Adkins v. United States*, 816 F.2d 1580, 1582 (Fed.Cir.1987). In spite of plaintiff's failure to respond to defendant's motion for summary judgment, the court declines to invoke the sanction of dismissal, and will proceed to consider the merits of plaintiff's complaint.

### B. The Merits of Plaintiff's Complaint

■ Plaintiff's sole cause of action in his complaint is that defendant breached the enlistment contract by discharging him from the Navy for glaucoma, because the Navy knew of his elevated intraocular pressure in both eyes before enlistment, and proceeded to allow him to enlist. Plaintiff seeks to recover the costs he incurred pursuant to his enlistment.

In *Beauchamp v. United States*, 6 Cl.Ct. 400 (1984), the court was faced with a similar issue. Initially, the court found that an Air Force re-enlistment agreement, plus applicable statutes and regulations, constituted a contract over which the court had jurisdiction. *Beauchamp, supra*, 6 Cl.Ct. at 404. The court's concern, however, was whether breach of an enlistment agreement can give rise to money damages. In its analysis, the court observed that there "appears to be no precedent" on the issue of whether breach of an enlistment agreement will support a claim for money damages. *Beauchamp, supra*, 6 Cl.Ct. at 405. The court noted that one district court case and two Court of Claims cases had previously raised the issue, but in each case the court found no breach. *Beauchamp, supra*, 6 Cl.Ct. at 405 (citing *Bruce v. United States Army*, 508 F.Supp. 962, 964 (E.D.Mich.1981); *Grulke v. United States*, 228 Ct.Cl. 720, 725 (1981); and *Jackson v. United States*, 216 Ct.Cl. 25, 43, 573 F.2d 1189, 1198 (1978)). The *Beauchamp* court explained the lack of precedent on the issue of whether money damages are recoverable for breach of an enlistment contract is likely due to the Supreme Court's pronouncement in *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961).

In *Bell*, the Supreme Court found that common law rules governing private contracts "have no place in the area of military pay," as a military person's entitlement to pay is dependent upon statutory rights. *Bell, supra*, 366 U.S. at 401, 81 S.Ct. at 1235. *See also United States v. Larionoff*, 431 U.S. 864, 869, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Kania v. United States*, 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268, *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Beckering v. United States*, 22 Cl.Ct. 30, 32 (1990). The *Beauchamp* court concluded that the enlistment agreement did not support a claim for money damages, and only those obligations imposed by law and regulations on the Air Force could possibly provide a basis for money damages. *Beauchamp, supra*, 6

Cl.Ct. at 406.[4]

■ In addition, it is a well-settled rule in this court that enlisted personnel in the military service do not have a contractual right to remain in the service until the expiration of their enlistment terms. *Giglio v. United States*, 17 Cl.Ct. 160, 166 (1989); *see also Waller v. United States*, 198 Ct.Cl. 908, 913, 461 F.2d 1273, 1276 (1972); *Keef v. United States*, 185 Ct.Cl. 454, 471 (1968); *Norman v. United States*, 183 Ct.Cl. 41, 49, 392 F.2d 255, 259–60 (1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 622, 21 L.Ed.2d 562 (1969); *Birt v. United States*, 180 Ct.Cl. 910, 913 (1967). Based on this rule, the Claims Court has held that a discharged member of the Air Force cannot sustain a claim for money damages for breach of an enlistment contract. *Giglio, supra*, 17 Cl.Ct. at 166. Indeed, the Federal Circuit has found that no one has an individual right, constitutional or otherwise, to enlist in the Armed Forces, as the composition of those forces is within the purview of the Congress and the military. *Maier v. Orr*, 754 F.2d 973, 980 (Fed.Cir. 1985) (citing *Gilligan v. Morgan*, 413 U.S. 1, 6, 93 S.Ct. 2440, 2443, 37 L.Ed.2d 407 (1973); *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir.1981)). Based on the foregoing precedent, it would appear that in this case, plaintiff's claim for money damages for breach of his enlistment contract must be denied.

■ It is also an established rule, however, that the administrative discharge of an enlisted person before the expiration of his enlistment term is void if it "exceeds applicable statutory authority, or ignores pertinent procedural regulations, or violates minimum concepts of basic fairness." *Waller, supra*, 198 Ct.Cl. at 913, 461 F.2d at 1276; *see also Giglio, supra*, 17 Cl.Ct. at 166. However, plaintiff does not challenge the Navy's authority to discharge him for

glaucoma, nor does he allege that any procedural regulation was violated. Moreover, since plaintiff acknowledges that he received notice of his rights and privileges in connection with his administrative discharge, plaintiff cannot complain that his discharge was not in accord with "minimum concepts of basic fairness." *See Giglio, supra*, 17 Cl.Ct. at 167–68.

Plaintiff alleges no defects or errors with regard to the Medical Board's determination that plaintiff, because of his glaucoma, did not meet the minimum physical standards for enlistment. Nor does plaintiff challenge the subsequent administrative decision to discharge him, based on the recommendation of the Medical Board. In fact, plaintiff agreed, in writing, with the statement that "I do not object to this discharge." In the interest of thoroughness, however, the court will review the propriety of the Navy's administrative decision to discharge plaintiff due to glaucoma.

■ It is well-settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province, and the court cannot substitute its judgment for that of the military departments where reasonable minds can differ." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985). Judicial review of military service determinations with monetary consequences can be summarized as follows: " '[R]eview of the administrative decision is limited to determining whether the ... action was arbitrary, capricious, or in bad faith, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.' " *Heisig, supra*, 719 F.2d at 1156 (citations omitted) (quoting *Clayton v. United States*, 225 Ct.Cl. 593, 595 (1980)).

---

4. As the Supreme Court noted in *Larionoff*, the rule that ordinary contract principles do not govern the rights of service members is implicit in the reenlistment agreement at issue in that case, which provided that service personnel agree to extend their enlistment "in consideration of the pay, allowances, and benefits which will accrue to me during the continuation of my service," rather than stating any fixed compen-

sation. *United States v. Larionoff*, 431 U.S. 864, 867 n. 7, 97 S.Ct. 2150, 2154, n. 7, 53 L.Ed.2d 48 (1977). In this case, plaintiff Taylor's enlistment agreement provides that, as a member of the Armed Forces, he is "[e]ntitled to receive pay, allowances, and other benefits as provided by law and regulation." No fixed compensation is stated.

*See also Krzeminski v. United States,* 13 Cl.Ct. 430, 436 (1987). Moreover, the quantum of evidence required to successfully challenge an administrative discharge generally must be "cogent and clearly convincing." *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986).

Plaintiff Taylor does not dispute that he is afflicted with glaucoma, nor does he deny that glaucoma is a basis for rejection from enlistment in the Navy. According to Navy regulations, AR 40–501, Chapter 2, section VIII, ¶ 2–12(i)(5), glaucoma is a cause for rejection of enlistment. Moreover, plaintiff does not question the Navy's authority to discharge him for glaucoma. The Navy's Manual of the Medical Department states, in section 18–2(3), that "[r]ecruits found to have a physical condition or defect which, had it been known at the time of entry, would have been considered disqualifying for enlistment are subject to referral for administrative discharge processing by reason of defective enlistment (erroneous enlistment)." Because glaucoma is difficult to diagnose, neither plaintiff's civilian ophthalmologist Dr. Schechter, nor plaintiff, nor the Navy knew at the time of enlistment that plaintiff had glaucoma. The Naval Recruiting Manual provides that civilian ophthalmologists are considered qualified to make statements concerning all diseases and conditions of the eyes. Thus, in accordance with its procedures, the Naval Medical Command relied upon the statement from plaintiff's ophthalmologist Dr. Schechter in finding plaintiff to be eligible for enlistment. In evaluating plaintiff's fitness for continued service in the Navy, the Medical Board noted that, since glaucoma is difficult to diagnose in the early stages, the enlistment personnel acted appropriately in accepting the written opinion of plaintiff's civilian ophthalmologist that plaintiff had "slightly high intraocular pressure" in both eyes.

Moreover, plaintiff acknowledges that he received notice of his rights and privileges in connection with his administrative discharge. He could have discussed his impending discharge with an attorney, but he chose not to do so. He could have had two working days to respond to his discharge proceeding, but he affirmatively waived this right as well. On the waiver form, plaintiff stated that he did not object to his discharge. The gist of plaintiff's complaint seems to be that, because the Navy did not prevent plaintiff from enlisting because of his eye condition, the Navy cannot discharge him after accepting his enlistment. A similar argument was rejected in *Giglio,* where the court stated that the fact that a course of action was taken later rather than sooner has no bearing on the appropriateness or propriety of the administrative discharge. *Giglio, supra,* 17 Cl.Ct. at 170. The fact that the Navy found plaintiff to be unfit for active duty after he signed the enlistment agreement, rather than before he signed it, does not alter the rule that the determination of whether an individual is suitable to serve in the military is not a judicial province. *See Wronke, supra,* 787 F.2d at 1576; *Heisig, supra,* 719 F.2d at 1156. The court finds the Navy's decision to discharge plaintiff for glaucoma to be reasonable and rationally based. There is no evidence of error or irregularity in plaintiff's discharge proceedings. Since the administrative decision to discharge plaintiff was not arbitrary, capricious, or in violation of any applicable law or regulation, it will be upheld.

Finally, although plaintiff does not specifically challenge the Navy's medical examination that diagnosed his glaucoma, nor does he challenge the Medical Board's determination and recommendation for discharge, any such challenge would likely fail. "Medical examinations conducted by military personnel carry a presumption of reliability." *Morgan v. United States,* 11 Cl.Ct. 88, 98 (1986), *aff'd,* 824 F.2d 979 (Fed.Cir.1987); *Crispino v. United States,* 3 Cl.Ct. 306, 312 (1983). In view of the absence of any evidence to the contrary, the court presumes that the Navy's medical examination and Medical Board proceedings were conducted properly and without error.

The materials before the court indicate that the administrative decision to dis-

charge plaintiff because of glaucoma was neither arbitrary or capricious, nor in bad faith, nor contrary to any law, regulation or procedure.

## CONCLUSION

Based on the above discussion, the court finds no merit in plaintiff's breach of contract claim. Therefore, the court grants defendant's motion for summary judgment. The Clerk is directed to enter judgment dismissing plaintiff's complaint. No costs.